Defendant desired to sell his residence in the City of Shreveport, being Municipal No. 625 Dudley Drive, and on January 10, 1941, appointed Mrs. Bert Swearingen, a realtor of said city, his agent to find a purchaser and close sale thereof. The pertinent parts of the contract signed by the parties to evidence their relations, read:
"In consideration of a reasonable effort to be made by you to sell the property described herein, at price and terms herein given, I hereby appoint you my exclusive agent for a period of two months, and thereafter until this contract is terminated by my giving you ten (10) days' notice in writing, and I authorize you to accept a deposit on the purchase price.
"In the event of the sale of the property during the life of this contract, I agree to pay you a commission based on the sale price of the property, at the rate of five (5%) per cent up to $10,000, and two and one-half (2 1/2%) per cent on all over and above $10,000 the property might bring. The price of the property shall be $6850."
Mrs. Swearingen did not find a purchaser for the property within the primary period of two months although she put forth considerable effort and incurred some expense in connection therewith. These efforts were not confined to the primary period but extended beyond it.
On May 31, 1941, defendant sold the property to D.H. Marston for $6,500, being $350 less than the price given Mrs. Swearingen. *Page 273 
On June 15th Mrs. Swearingen had a prospect for the property and telephoned defendant that she wished to show it to this prospect. Defendant advised her that the property had been sold. She thereupon demanded payment of the commission stipulated in the contract and on being refused, this suit by her and her husband to recover the commission followed.
Answering, defendant avers that "after much persuasion, cajoling and insistence" by Mrs. Swearingen he consented to grant unto her the exclusive right to sell his property for the period of sixty days and no longer; that thereupon she handed him a prepared contract covering the agreement between them which he signed without reading; that subsequent to said signing, but on the same day, he read the contract and then discovered that the term thereof was not limited to sixty days as agreed and so notified Mrs. Swearingen, who advised him that the provision whereby the life of the contract would be automatically extended beyond the primary period of sixty days unless written notice of its termination was given by defendant, was therein through error and mistake and that then and there the contract was by mutual agreement orally modified by deleting therefrom said objectionable provision; that he sold the property long after the contract with Mrs. Swearingen had expired by limitation. For these assigned reasons, defendant denies that he owes her any commission.
From a judgment in favor of Bert Swearingen, the husband, for the amount sued for, defendant appealed.
There is but one issue for decision and it is whether the following provision in the written contract, "and thereafter until this contract is terminated by my giving you ten (10) days' notice in writing," was incorporated therein by mutual error or mistake. If not, then this provision is an integral part of the contract and defendant's liability for the commission is beyond question. Doll v. Thornhill, La.App., 6 So.2d 793.
Defendant is an experienced business man. Mrs. Swearingen is a successful realtor of many years' active experience. She, accompanied by Mrs. Ruby Scott, a real estate sales woman, went to defendant's office and solicited from him an exclusive contract to sell his property. He demurred about giving her such a contract, but finally consented. A short written form of agreement used regularly in her brokerage business was produced and handed to defendant. He filled the blank spaces therein with words and figures needful to its completion, including the date, the municipal number of his place, the price wanted, the word "two" preceding the word "months" to indicate the primary term of the agreement, and then signed it. He also interlined the word "not" between the words "will furnish" in the following sentence below the signatures; "will furnish abstract". He testified that after this was done, he handed the document to Mrs. Swearingen without reading it; that she asked who constructed the residence and for facts about the mortgage thereon; that she handed the contract back to him and he then wrote thereon below the signatures, the following:
"Jack Moore Builder Balance Due as of January 1, 1941, $4720.99 Monthly Payments $44.40 to Home Federal Date of Loan 10/20/38."
He added that after he had done this he read the contract in full and protested against the provision requiring him to give written notice in order to terminate its life; that Mrs. Swearingen stated this provision was a mere formality and amounted to nothing. At this juncture, the trial judge became very much interested and elicited from defendant the rather interesting testimony which we here quote, to-wit:
"Q. The provision is perfectly plain, did you read it? A. Yes, sir.
"Q. What about it is there that you do not understand? A. I objected to it.
"Q. You had been in business a long time and familiar with such paper? A. She diverted my attention to discussing with respect to a bond and insurance; we got upon that subject and I thought nothing more about it.
"Q. You are an experienced business man? A. Supposed to be.
"Q. Don't you consider that the provision in this contract is more than a formality? A. I objected to it, Judge, and was going to ask her to take it out of there; she diverted my attention to it, and I forgot all about it."
He also testified:
"Q. When did you next think about it? A. I never thought any more about it until she called me about it.
"Q. At the time you signed the contract and objected to that provision, she told you *Page 274 
that was only a formality and that she only wanted it for sixty days? A. That is right.
"Q. Did you get a copy of the contract? A. No, sir, she did not offer me a copy of the contract."
It is passing strange that defendant did not then and there delete this provision from the contract if he objected to it; and it is wholly inexplicable that he did not again think of it until Mrs. Swearingen demanded the commission several months thereafter. It is also inconceivable that in a matter of this character, deemed very important by a successful and experienced business man, his attention thereto could have been so easily diverted by the introduction of another business subject wholly unrelated thereto. It will be recalled that the answer sets forth defendant was "persuaded and cajoled" into signing the contract.
Defendant's testimony does not support his answer. He did not testify, as by him alleged, that Mrs. Swearingen said the objectionable clause was in the contract through error and mistake nor that she then and there agreed to its elimination. If she referred to the provision as amounting to nothing, the statement, in a way, was not entirely untrue. Whether it would amount to anything rested entirely in defendant's power.
The inescapable facts are that this conditional provision was in the form of contract when handed to defendant. He had ample opportunity to read the contract in full and it is difficult to understand why he did not do so in view of what was done and said at the time. The provision was in the contract unerased when he handed it back to plaintiff, and it is therein now. It was not placed therein through error nor mistake and the defense on this score is without foundation. Defendant carried the burden of proving the special defense and failed to discharge it.
Mrs. Swearingen and Mrs. Scott both testified that there was no discussion of the mentioned provision before, at time of, nor subsequent to defendant affixing his signature to the contract. They say he read it in full before signing it. Mr. Fleming, defendant's associate, inferentially corroborates the testimony of defendant, but he was not in a position to hear and understand all the discussion between the parties.
The testimony concerning what was said and done with regard to the embattled provision was objected to by plaintiff's counsel on the ground that it was an attempt to contradict, alter and change the terms of a written contract, reprobated by Article 2276 of the Civil Code, which reads as follows: "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
The testimony was admitted subject to the objection. In view of defendant's own testimony bearing upon this issue, the objected to testimony was not admissible. No error nor mistake attended the consummation of the contract. For error, in a case of this character to have the effect of abrogating a contract or essential portions thereof, it must have been mutual. Article1826, Civil Code; Hello World Broadcasting Corporation v. International Broadcasting Corporation, 186 La. 589, 590,173 So. 115.
The fact that Mrs. Swearingen continued her efforts to sell the property after expiration of the primary term clearly shows her understanding of the contract as a whole and reflects her dependence upon the provision as an integral element thereof. Surely there was no error on her part.
In reality, the term of the contract was sixty days. Whether its life would extend beyond this period was exclusively within the volition of defendant. Any time after the contract's date he could have given to Mrs. Swearingen the written notice mentioned therein which would have terminated its existence at the expiration of the primary period. He knew this clause was in the contract and had not been erased, and not having availed himself of the privilege of limiting its existence to sixty days, Mrs. Swearingen was warranted in continuing her efforts to sell the property after that time. The defendant obligated himself to pay to her a commission of five per cent (5%) in the event the property was sold during the life of the contract; and on May 31, 1941, when the property was sold, the contract was in full force and effect through defendant's own silence and inaction.
The judgment appealed from is affirmed, with costs. *Page 313