HAMITER, Justice.
As authorized by Article VI, Section 19.1 of the Constitution of Louisiana and LRS 48:441-460, the State of Louisiana, through the Department of Highways, instituted this proceeding to expropriate for a highway right of way three separate parcels or tracts *25 of land (two small and one relatively large) located near the City of Amite and owned by D. H. Sanders Realty Company, Inc. Simultaneously, to compensate for the taking, it deposited the sum of $13,150 in the registry of the district court.
Answering, the defendant owner complained that the compensation proposed to be paid was insufficient. It then asserted a claim of $49,122.65, this being for the value of the property and certain specific damages.
During the trial there was no contest regarding the amount deposited for taking the two smaller parcels. In fact, it was stipulated that $690 was adequate therefor. Consequently, the evidence adduced concerned only the third or largest parcel, it containing 20.271 acres. This parcel is a strip, irregularly shaped and ranging in width between approximately 140 and 300 feet, which runs through a much larger tract owned by the defendant.
For the taking of this strip the trial judge awarded $21,727.62. In arriving at the award he valued 18.021 acres at $1000 each, being of the belief that the highest and best use of such area was for gravel mining. The remaining 2.25 acres, consisting of ponds, was valued at $225 ($100 per acre). Additionally, the judge allowed $2252.62 for “surface value” of the 18.021 acres (at $125 per acre). The balance of the award represented certain specific damages.
From the judgment the Department of Highways appealed to the Court of Appeal, First Circuit. The defendant answered, asking for an increase in the amount awarded.
The Court of Appeal was of the opinion that the 18.021 acres was worth $1750 per acre for gravel mining (rather than $1000 as found by the district judge) and, consequently, it increased the value of this acreage for such purpose to $31,536.75. Further, it affirmed the allowances of $225 for the pond acreage and of $2252.62 for “surface value”. Also, it set aside the district judge’s award for specific damages. These amendments to the judgment resulted in an allowance of $34,014.37 for the 20.271 acre strip. (See 145 So.2d 586.)
At the instance of the plaintiff we issued the writ of certiorari or review. The defendant did not file an application.
In this court it has been agreed that the value of the 2.25 acres of ponds ($225) is correct, and that the only issue presented for our determination concerns the worth of the remaining 18.271 acres which, under our well settled jurisprudence, must be valued in accordance with its highest and best use.
After reviewing the record we have concluded that the highest and best use of the property is for gravel mining (there is evidence that it also contains some sand deposits, but the testimony makes it abundantly clear that no market for sand existed at the time of the expropriation). Our stated conclusion is based chiefly on the detailed testimony of Mr. Charles C. Muller, an expert witness called by the defendant. During a period of twenty-three years he, as general superintendent in charge of testing lands for Jahncke Service, Inc. of New Orleans (a large commercial supplier of gravel), conducted numerous tests in the general area to determine the feasibility of gravel mining operations there.
In preparation for his testimony in the instant proceeding Mr. Muller made five tests at random spots along the length of the right of way strip, and thereby he found sizable gravel deposits ranging from 19 to 27 feet in depth (averaging approximately 22.2 feet in all five holes). And on the basis of these tests he was of the opinion that the entire 18.271 acre strip was especially suited for gravel mining.
Plaintiff offered no evidence to rebut Muller’s testimony. In fact, the appraisals of its two experts took into account acknowledged gravel deposits in five acres of the strip (two at one end and three at the other *26 end, the minimum value of which was placed at $1000 per acre). Moreover, other evidence discloses that there are sizable gravel deposits generally throughout defendant’s lands, on both sides of and in very close proximity to- the property expropriated.
 In this connection we are unable to accept the appraisals of plaintiff’s two experts on this acreage (which were $9105 and $9737.25, respectively, for the 18.271 acres) because, although they took into consideration the gravel deposits on five acres at the ends of the strip and assigned appropriate values therefor, those appraisers did not properly evaluate the remaining 13.271 acres. As to this acreage they conceded that they made no tests and merely gave an arbitrary value of $300 per acre or less to it. Pertinent here is an observation contained in State of Louisiana, Through the Department of Highways v. Hub Realty Company, Inc., 239 La. 154, 118 So.2d 364 that: “* * * If evidence of similar sales is not available, the value of the land expropriated must be determined by other means, generally the testimony of experts. The rule here is that the testimony of each expert should be given effect if that testimony appears to be well reasoned and sincere. However, if the expert testimony impresses the court unfavorably, it will be disregarded. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d. 541; Domino v. Domino, 233 La. 1014, 99 So.2d. 328; State v. Grand Consistory, [of the Thirty-Second Degree of the Ancient and Accepted Rite of Masonry], 237 La. 1005, 112So.2d. 692.”
Important to notice at this point is the manifest error committed by both the district court and the Court of Appeal (which primarily was responsible for our issuance of the writ of certiorari) in adding to their evaluations of the 18.021 acres, based on its highest and best use (gravel mining), a “surface value” for pasturage purposes. In almost all states the courts have held in evaluating expropriated property its market value as a whole must be determined, and that it is not proper to attempt to segregate the various elements thereof and appraise-them separately.
We recently considered a similar issue in State of Louisiana, through the Department of Highways v. Hayward, 243 La. 1036, 150 So.2d 6, and therein we approved the following language contained in 18 American Jurisprudence, page 878, verbo Eminent Domain, Section 242: “When the-land taken has valuable deposits of minerals,, or contains sand, gravel, peat, or other materials of value, or is covered with growing-crops, or trees capable of being converted' into lumber, these circumstances may be-considered so far as they affect the market value of the land; but part of the realty cannot be separately valued for its materials,, as an item additional to the value of the land for the purpose of sale.” Since the 18.021 acres involved here must be appraised wholly and solely for gravel mining purposes it follows that an additional “surface value” is not allowable.
The conclusion of the Court of Appeal that the strip in question was worth $1750> per acre (for gravel mining) appears to-have been arrived at by averaging $1500- and $2000 per acre, the last two- sums being-its appreciation of the values placed on the property by defendant’s expert witnesses. However, the testimony of those witnesses,, as we shall hereinafter demonstrate, does not support such conclusion.
Mr. Muller, to whom we have referred' previously, did not testify as to the actual market value of the land. Rather, he evaluated its estimated gravel content. Thus,, relying on his tests, he thought that there were approximately 12,534 cubic yards per acre over the whole area and that its royalty worth was ten cents per yard. On this, basis he assumed the gravel in situ to be worth $1253.40 per acre (he testified also that the recoverable sand would increase this amount to $1486.20, but as we have indicated the testimony of at least one of the *27 '•defense witnesses is that “there was no .market for sand”). However, according to • our previously stated conclusion, and in view of our holding in the above cited Hayward case, the method employed by Muller for evaluating the strip was improper.
Again, the testimony of Mr. Edwin S. Anderson, a gravel operator, is not acceptable for establishing the market value of the ■land in question. He simply stated that he knew there was a small deposit of gravel at ■ one end of the strip and that he was paying over $1000 per acre on other lands which he was mining — he would “guess” between $1500 and $2000; but when requested by defense counsel to make an estimate as to the worth of the entire strip for gravel mining .purposes he replied “I can’t do that”.
Likewise, the testimony of Mr. Fred A. .Anderson, Sr. is of little importance in this .dispute. Whatever estimate he made as to the value of the land for gravel mining was based on certain unidentified figures (not 'Muller’s) supplied to him by defense counsel which the witness frankly stated he could not accept as being correct. Further, he said that he would not contract for the ■gravel without himself making tests.
Of course, we do not in any manner question the qualifications of the aforementioned witnesses or suggest that their testimony was evasive and not straightforward. To the contrary, from their answers to questions propounded it is apparent that they were very reluctant to give estimates not based on their own knowledge or to draw conclusions which they did not themselves deem to be well grounded. Besides, the estimates given by them were mainly in response to hypothetical questions propounded by defense counsel.
In our opinion the only expert testimony of appreciable probative effect relative to the instant issue (other than Mr. Muller’s which established the fact that the entire expropriated strip of 18.021 acres should be evaluated as a mining quarry) is that of Mr. James P. Watson, a defense witness who had conducted gravel mining operations near Amite for a number of years. He had heard Muller’s testimony regarding the tests made, and he was familiar with the area generally. In fact, at the time of the trial he was removing gravel from another parcel owned by the defendant and located about a quarter of a mile north of the proposed highway. He stated that he had been paying approximately $2000 per acre in royalties for gravel taken from the other parcel. However, that parcel was “right next to the river” (the Tangipahoa), at which place, the testimony discloses, the heaviest gravel deposits are to be found; whereas, the strip in question runs more or less perpendicular to and away from the river.
As to the entire instant strip (18.021 acres) the witness Watson testified that he would pay $1000 per acre for the right to mine the gravel. His opinion was, in other words, that it is worth such sum for gravel mining purposes. This value, incidentally, is the same as that placed by the district judge on the entire strip and by plaintiff’s two expert witnesses respecting three acres located “close to the river”. Too, it varies very little from Muller’s evaluation of the strip’s potential gravel content.
Therefore, our conclusion is that the correct market value of the 18.021 acres of $1000 per acre, or a total of $18,021. And by adding thereto the amount of $225 for the 2.25 acres of ponds and the further sum of $690 (the agreed worth of the two smaller parcels) we arrive at a value of $18,936 for all three of the tracts expropriated.
For the reasons assigned the judgment of the Court of Appeal is amended by reducing the total amount awarded defendant,, for the three expropriated tracts, to $18,936; and as thus amended the judgment is affirmed. Costs of this court shall be paid in equal proportions by the plaintiff and the defendant.
*28 SANDERS, J., dissents with written reasons.