SAVOY, Judge.
Plaintiff has appealed a judgment rendered by the district court.
This is an expropriation case in which the subject property is located in Lafayette Parish, Louisiana, the taking of which was • for the purpose of constructing a state highway.
Plaintiff deposited the sum of $24,000.00 for the property of the defendants which it expropriated. Prior to the expropriation, the property consisted of a single tract of land comprising approximately 15.4 acres. At the time of the taking, the property was devoted in part to truck garden operations with a portion of the land lying idle. The property was situated on the north side of Willow Street, just outside the northerly city limits of Lafayette, Louisiana; Willow Street at the time of the taking was a blacktop service road. The property had a frontage of approximately 625 feet on Willow Street. It adjoined the Alice Boucher Elementary School (Lafayette Parish School Board), which was the bounding property to the west. The property extended north from Willow Street and fronted partially on Lillian Street, which was an inferior roadway, and partially on Adolph Street and Johnny Street, which made an “L” shaped cutout of the original tract.
The property actually expropriated consisted of exactly 7.372 acres. The entire frontage on Willow Street was required, thence running northerly along the easterly side of- the property to its boundary on Lillian Street. Thus there was a remainder after the expropriation of approximately 8 acres, said remainder being the westerly half of the original tract of slightly over 15 acres. There were no improvements on the property, so the only issue as to the 7.372 acres actually expropriated is the market value of the land.
The record reveals that there are some residential subdivisions in the immediate vicinity of the property in controversy.
Three experts were used by plaintiff, namely, Messrs. Allen J. Angers, Lew W. Munson and Maurice J. Chappuis. All of these experts used the market data approach in arriving at a value of the property. All concluded that the highest and best use of the property was for potential subdivision acreage. Angers valued the property expropriated at $24,000.00; Mun-son placed a value of $19,175.00 on said property; and Chappuis gave it a value of $18,430.00. All of the experts stated that there were no severance damages to the property, but, on the contrary, the remaining property would benefit from the new highway.
Defendants had as experts Messrs. S. D. Young and Fred W. Bates. Mr. Young found the highest and best use of the subject property to be for subdivision purposes. He placed a value on the property expropriated at the sum of $51,232.50. Instead of using the acreage basis for placing a value on the property, he used the lot basis in arriving at the above sum.
The record shows that the subject property has never been surveyed, nor has a plat been made thereof, but that the value of the property was arrived at by Young by preparing a hypothetical subdivision on paper and comparing the lots in this proposed subdivision with the sale of comparable lots in the immediate vicinity.
The test in determining market value in the instant case is set forth by our State Supreme Court in the case of Iberia Parish *497 v. Cook, 238 La. 697, 116 So.2d 491, in which the court held as follows:
“In determining the market value of property expropriated, it must be conceded that it is not merely the value for the use for which it has been applied by the owner that should be taken into consideration. The possibility for its use for all available purposes for which it is adapted and to which it might in reason be applied should be considered. The ultimate test of value in that respect is what men of wisdom and prudence and having adequate means would devote to the property if owned by them. On the other hand, possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value should be excluded from consideration. In speaking of adapted uses of the property, it is meant the use of the property in its present condition as a whole. The owner’s plans or hopes for the future should be held completely irrelevant, being more often illusory than real. Situations may arise where land is actually available for commercial development, as subdivided lots. The measure of compensation in such instances should not he the aggregate of the prices of the lots into which the tract could he divided, for so many contingencies may intervene as to make such measure of compensation too uncertain and conjectural. The test is the market value of the land as a whole, taking into consideration its value for building purposes of a not too speculative nature. * * * ” (Citations omitted.)
The holding in the Cook case, supra, was followed by this Court in State through Dept. of Highways v. Riley (La.App., 3 Cir., 1962), 143 So.2d 396.
In our opinion the method used by Mr. Young in appraising the subject property was erroneous under the facts of this case. In State v. Riley, supra, this Court said:
“In 29 C.J.S. Eminent Domain § 160 pp. 1027-1028 the law is stated thus :
“ ‘Adaptability for building lots. It may be shown that the ground is adapted to be cut up into town or city lots, or that it may be subdivided into smaller building lots. Such use cannot be considered where it is merely speculative and is too remote to influence the present market value of the land; but such use is not as a matter of law too speculative simply because the land is not at the time built on, the owner has not filed a town plat, or the land is used by the owner only for farming or dairy purposes. The value to be considered is the value of the ■tract for subdivision purposes, not the value of each of the proposed lots.’ ”
Also, we have the testimony of Mr. Busch, one of the co-owners of the property, who testified that he did not want to subdivide the subject property, but wanted to keep it in connection with his brick factory. The particular soil had certain chemicals which made it excellent for the manufacture of a certain type of brick.
Mr. Fred Bates, the other expert testifying on behalf of defendants, is a consulting geologist and mining engineer. As to this expert, the district court made the following observations:
“The defendants called Mr. Fred Bates, a consulting geologist and mining engineer, who testified as to the clay content of the land taken, together with the content of the remainder of the Busch property, and reached a value for the property taken, based upon the mineable clay contained on the Busch property. The defendants urged that this Court -accept the figures given by Mr. Bates as the market value of the property, as Mr. Bates testified that the highest and best use for the property given was for operation of a brick factory. However, the court is of the opinion that the value of the minerals in *498 •the land expropriated can be taken into consideration only in arriving at the market •value of the surface of the property taken, and as all of the testimony of Mr. Bates was based upon the value of the clay through the process of mining, the court cannot conceivably find that the potential value as a clay mining operation, connected with the brick factory, is the determining factor in establishing the market value of the expropriated property. (See State through Dept. of Highways v. D. H. Sanders Realty Company, 244 La. 934, 155 So.2d 24) Apparently, the figures given by Mr. Bates, while of extreme interest to this court as to the value of the clay when used in a brick manufacturing operation, do not enable the court to establish market value of the property, since they are not evidentary of the market value of clay bearing land, in view of the fact that testimony was to the effect that many, many acres of land with the same basic clay, sand and plastic content for brick purposes could be found within a very small radius of the property expropriated and could be acquired for as little as One Thousand to Fifteen Hundred ($1500.00) Dollars per acre.”
We concur with the holding of the district judge in connection with Mr. Bates’ testimony.
The value placed on the defendants’ property in excess of $3,000.00 per acre by some of plaintiff’s experts, in the opinion ■of this Court, represents the fair market value of the property at the time of the •expropriation.
For the reasons assigned the judgment ■of the district court is amended by reducing ■the judgment awarded defendants from the sum of $52,232.50, to the sum of $24,000.00, .and, as amended, is affirmed. Appellants to pay all costs incurred in the district court. Appellees to pay the costs of this appeal.
Amended and affirmed.