249 So.2d 310 (1971)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Zeadous M. HART.
No. 8358.
Court of Appeal of Louisiana, First Circuit.
May 31, 1971.
Rehearing Denied June 30, 1971.
*312 L. Barbee Ponder, Jr., of Ponder & Ponder, Amite, for appellant.
Johnie E. Branch, Jr., and Philip K. Jones, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
LANDRY, Judge.
Defendant-landowner, Zeadous M. Hart, complains on this appeal that the trial court awarded insufficient compensation for appellant's land taken and severance damages to appellant's remaining property as the result of expropriation proceedings instituted by plaintiff (Department). Appellant principally contends that the trial court erred in failing to award compensation both for the land taken and for severance damages on the basis that the land's best and highest use was for gravel and sand mining instead of residential and agricultural use as found by the trial court. The Department has answered the appeal contending the awards made by the trial court, both for property taken and severance damages were excessive and should be reduced. We reduce the awards as hereinafter noted.
The expropriation occurred February 24, 1964, pursuant to LSA-R.S. 48:441, et seq., the Louisiana Quick Taking Statute. The Department expropriated 6.264 acres from defendant's rural, rolling hill, semi-wooded tract of 55.6264 acres. Subject property is situated between Ponchatoula and Natalbany, Louisiana. The portion taken was required for construction of 1-55, the right of way for which is 300 feet wide. Prior to the taking, the entire tract fronted on the east side of a two-lane, blacktopped highway. Appellant's residence faced the highway and was set back some distance therefrom. At the time of taking, defendant lived on the property which he devoted to farming and cattle raising purposes. The taking severed the property leaving 19 acres east of the new Interstate Highway and completely inaccessible thereto. West of 1-55, appellant has 30 acres remaining on which his home is situated. This tract retains its frontage on the above mentioned blacktopped highway. The 19 acres remaining cast of 1-55, although having no direct access to 1-55, has an outlet and inlet by means of a public road, the major portion of which is graveled and the remainder a dirt road. On the remaining 19 acres is situated an old residence and other improvements of little value. Since the taking, the distance from appellant's residence to his east remaining acreage is 3.4 miles by road, part of this distance being over the above mentioned gravel and dirt road. At the time of trial in October, 1966, part of the property was being utilized in a limited commercial sand mining operation.
Upon filing suit, the Department deposited in the registry of the court the sum of $1,925.00 as the estimated value of the land taken, and $1,173.00 as severance damages, a total of $3,098.00. This case was tried in a series of hearings conducted over a protracted period. On January 20, 1970, the trial court rendered judgment in favor of defendant in the sum of $835.20 in excess of the Department's deposit. On July 27, 1970, the lower court amended its decree increasing defendant's award an additional $1,000.00 for timber taken and yet another $1,000.00 for loss of improvements consisting of a well and chicken yards. The Department maintains the maximum award should be $3,350.00, as determined by its appraiser, Max J. Derbes.
It is stipulated that timber valued at $1,000.00 was situated on the 6.264 acres taken for the highway project.
The Department's appraiser, Chester Driggers, appraised subject property as of November, 1963, which appraisal was revised as of February 24, 1964, the date of taking. He described the land as being mostly rolling hill land which he deemed some of the higher and better drained land *313 in Tangipahoa Parish. He found the 6.264 acres taken were mostly in pine timber. Using the market data approach, namely, three comparable transactions, he determined subject property was best suited for pasture, timber growing and farming, and on this basis, he valued the land at $225.00 per acre. Driggers was of the opinion that whereas some land in the area had brought as much as $365.00 per acre when sold for sand and gravel mining, subject property was not rich in such minerals and had little value, if any, for mining purposes. Driggers valued the 6.264 acres taken at $225.00 per acre, or $1,409.40, which figure he rounded off to $1,410.00. Fencing taken was valued at $10.00, making a total of $1,420.00 for property taken. The timber taken was considered to have enhanced the value of the land taken by $100.00 per acre, but Driggers noted he had included this enhanced value in his $225.00 per acre appraisal. Because the parties had stipulated a value of $1,000.00 for timber taken, Driggers found it necessary to increase his appraisal of the 6.264 acres taken by the sum of $400.00 to an aggregate of $1,820.00, including the fencing.
Driggers observed that the western remainder sustained no reduction in road frontage, no loss of access, no change in highest and best use, and no reduction of efficiency with respect to its highest and best use. On this basis, he concluded this remainder sustained no severance damages. He found that the east remainder, being entirely severed from the west remainder, suffered a reduction in value of $50.00 per acre, an aggregate of $950.00, due primarily to its limited access. Driggers also valued the cabin and other improvements on the eastern remainder at $520.00 before the taking, and $50.00 thereafter, a diminution in value of $470.00. His total of severance damages to the eastern remainder was therefore $1,420.00, which added to his valuation of $1,820.00 for property taken, amounted to the sum of $3,240.00.
Max J. Derbes, appraiser, appearing for the Department, testified that in valuing the property he examined some 50 transactions from which he selected five as comparables. All five comparables were sales occurring within two years of the taking, and involved properties situated in the same area as defendant's land. He considered the best and highest use of appellant's property was for a home site, pasture land and timber operations. Based on his comparables, he appraised subject property at $300.00 per acre, which valuation included the $1,000.00 stipulated value of the timber on the acreage taken. He valued the 6.264 acres taken at $1,879.00, to which he added $46.00 for fencing destroyed and reached an aggregate value of $1,925.00 for property expropriated.
Derbes, as did Driggers, found no severance damages to appellant's remaining western 30 acres. His reasons in this regard were substantially the same as Driggers'. Derbes also considered that the loss of access to appellant's remaining 19 eastern acres devalued that remainder by $75.00 per acre. He found, however, that this loss could be cured by improving the existing access road thereto at a cost of $1,425.00. Derbes therefore considered appellant's total damages to be $3,350.00, or $1,925.00 for property expropriated and $1,425.00 severance damages.
John F. Grosch, Civil Engineer, supervised a soil boring and subsoil analysis of subject property to determine its value for sand, gravel and other mining potential. Three borings, four inches in diameter and thirty feet in depth, led to the conclusion that no appreciable gravel underlay the surface. Appellant's witnesses, Stanley and Fred Anderson, were present at the boring operations.
Mr. Robert S. McClendon, appearing for appellant, found the highest and best use of subject property was for sand and gravel mining. For these purposes, he valued the land at $2,000.00 per acre. In fixing this value, he did not use comparables because *314 he could not find any prior sales of similar properties for sand and gravel mining purposes. Based on the soil test boring taken by Grosch, he computed the royalties an owner would receive for the underlying sand and gravel. Mr. McClendon noted that adjacent owners received 8¢ to 15¢ per cubic yard royalty for sand and gravel. Using these royalty figures, he arrived at his valuation of $2,000.00 per acre or $12,492.00 for the 6.264 acres taken.
Severance damages to defendant's remainder were fixed by McClendon at $23,596.00. He determined that 7.648 acres of the total remainder could not be mined because of regulations issued by the Department forbidding excavation within 300 feet of highway right of way. McClendon also noted that mining within 200 feet of a highway right of way creates serious risk of undermining the roadway and thus exposing the landowner to potential liability of considerable proportions. On this premise, he found $15,296.00 severance damages to 7.648 acres adjoining the right of way. McClendon found that the cost of curing the loss of access to defendant's remaining 19 eastern acres totaled $4,500.00. He explained that this sum consisted of $3,000.00 for the purchase of required right of way and $1,500.00 for construction of a road thereon. Additionally, he found severance damages of $200.00 per acre to the remaining 19 acre plot, or the further sum of $3,800.00. McClendon's total appraisal was $36,088.00, consisting of $12,492.00 for property taken and $23,596.00 severance damages.
Thomas G. Womack, Sr., appraiser, testifying for appellant, did not use comparables in valuing the property. He found the highest and best use of the land was for farming and cattle raising. Relying on his general knowledge of land in the area, he appraised the property at $500.00 per acre, or $4,132.00 for the 6.264 acres expropriated. To this figure, he added $1,000.00 for timber. Mr. Womack considered the 19 acre remainder worthless to its owner without access thereto. Contrary to all other experts, he determined the eastern remainder contained 14 acres which he valued at $500.00 per acre, or $7,000.00. His total appraisal of defendant's loss was therefore $11,132.00.
Fred A. Anderson, a real estate and sand and gravel expert, testified that the highest and best use of subject property is for mining of commercial sand. He asserted that 4 acres of defendant's remainder could not be mined because of the possibility of endangering the new highway. He also stated that he owns property adjacent to defendant's land, and that he has conducted mining operations on his own land.
Stanley Anderson, highway construction contractor, established that he has considerable experience in sand and gravel mining. He acknowledged that his brother, Fred Anderson, owns property which is adjacent to subject property, and also the subject of pending expropriation proceedings. Anderson noted that he has purchased sand and gravel from his brother's adjoining property. His analysis of the borings taken on defendant's land disclosed that the property has little gravel content, but does have sand deposits usable for filling in foundations. Anderson found the highest and best use of subject land is for mining purposes which would produce royalties of 10¢ per cubic yard for sand, or $2,450.00 per acre. Anderson found severance damages of $13,720.00 based on the assumption that mining operations could not be conducted within 150 feet of the new highway right of way. His total assessment of defendant's loss was $29,046.80, consisting of $15,326.80 for land taken and $13,720.00 in severance damages. Anderson estimated it would cost $25,431.25 to construct a box culvert underpass beneath the new highway connecting defendant's remainders sufficient in size to accommodate passage of cattle and farm machinery.
Anthony P. Monteleone, owner of a dirt hauling business, stated he purchased red sandy fill for use under house slabs from defendant until a week before trial. He *315 stated he dug to a depth of 20 feet and paid 15¢ per cubic yard for fill excavated.
The trial court awarded defendant a total of $5,933.20, consisting of $2,760.20 for land taken, $1,173.00 severance damages, $1,000.00 for timber taken and $1,000.00 for loss of a well and chicken yards.
Appellant contends the trial court erred in: (1) disregarding the opinions of local experts who lived in the vicinity of subject property, which experts found the best and highest use of appellant's land to be for mining purposes; (2) awarding only $450.00 per acre for the 6.264 acres taken when its value has been shown to be at least $1,500.00 an acre; (3) disallowing severance damages due to bisection of the tract and defendant's inability to conduct mining operations within 200 feet of the new right of way, and (4) declining to value the remainder within 200 feet of the new right of way at the same per acre value as the 6.264 acres expropriated.
Appellant seeks the following increases: (1) The sum of $9,396.00 for 6.264 acres taken at a per acre value of $1,500.00 per acre, together with an additional $9,396.00 for 6.264 acres rendered useless for mining purposes; (2) severance damages of $1,000.00 per acre for 19 acres lying east of the new construction and deprived of highway access, $19,000.00; (3) severance damages in the sum of $1,500.00 for diminution in value of defendant's western remainder whereon his residence is situated; (4) severance damages of $2,000.00 for loss of use of improvements on the remaining 19 eastern acres; (5) loss of a well, chicken yards and other miscellaneous improvements, $1,000.00; (6) stipulated loss of timber in the amount of $1,000.00, and (7) cost of providing access to the severed 19 acre tract east of the new highway, $2,000.00, a total of $46,896.00.
In answering the appeal, the Department urges that the award of an additional $835.20 for land taken, as well as the $1,000.00 allotted for the well, chicken yards and other miscellaneous improvements should be set aside for lack of sufficient proof. The Department also contends the additional sum of $1,000.00 allowed by the trial court for timber destroyed should be set aside because the value of the timber lost was included in the per acre valuations of land taken according to the estimates of the Department's appraisers. The Department therefore argues the total award to appellant should be reduced to $3,350.00, the value of appellant's damages as fixed by Derbes.
Our jurisprudence is settled to the effect that evidence of the value of minerals or other underlying land deposits is admissible for the purpose of establishing market value in an expropriation proceeding, but that such evidence is not the measure of just compensation. State Through Department of Highways v. Hayward, 243 La. 1036, 150 So.2d 6. In so concluding, our Supreme Court in Hayward, above, adopted the ruling in Reiter v. State Highway Commission, 177 Kan. 683, 281 P.2d 1080, wherein the Kansas court declared:
"The question for determination was the value of the land, not the value of the sand beneath the surface. It was proper to show the quantity and quality of the sand, and these elements could be considered in arriving at the value of the land as a whole. However, it was not proper to arrive at a value of the land being condemned by taking such quantity of sand and multiplying it either by a royalty rate per yard, or by multiplying such quantity by a price and was currently bringing per yard."
The rule that the measure of compensation for land taken is not the unit value of extracted underlying minerals, but rather the per acre value of the land, considering its mineral content, was expressly reiterated in State Through Department of Highways v. D. H. Sanders Realty Company, *316 Inc., 244 La. 934, 155 So.2d 24, wherein the following language appears:
"Mr. Muller, to whom we have referred previously, did not testify as to the actual market value of the land. Rather, he evaluated its estimated gravel content. Thus, relying on his tests, he thought that there were approximately 12,534 cubic yards per acre over the whole area and that its royalty worth was ten cents per yard. On this basis he assumed the gravel in situ to be worth $1,253.40 per acre. * * * However, according to our previously stated conclusion, and in view of our holding in the above cited Hayward case, the method employed by Muller for evaluating the strip was improper."
The foregoing authorities completely negate the contention that the state must pay for land by the cubic yard where it has underlying minerals capable of being mined and sold at such unit price. The cited authorities compel our rejection of the testimony of Messrs. Andersons and McClendon who valued subject property on the basis of royalties that an owner could receive for mineral excavation therefrom. Moreover, in this case, we concur in the trial court's holding that defendant failed to establish by satisfactory evidence that the property was best suited for sand and gravel mining. Mr. Womack's testimony, based solely on personal knowledge, does not satisfactorily prove that appellant's land was best suited for gravel and sand mining.
The trial court's ultimate award of $2,760.20 for the 6.264 acres taken reflects a valuation of $440.00 per acre for this item of damages. In fixing the value in this respect, it is obvious that the lower court relied primarily upon the Department's appraisers, Driggers and Derbes, whose appraisals were $1,820.00 and $1,879.00, respectively. The Department contends this award should be limited to the valuations given by its appraisers. Although the highest and best use of subject property is farming and cattle raising, it appears, as found by the trial court, that it possessed some enhancement in value because of the underlying commercial sand deposits. The trial court's award of $2,760.20 for land taken reflects a per acre value of $440.00, which exceeds the $365.00 per acre value shown to have been paid for lands in the area containing marketable gravel deposits. Under the circumstances, we find no error in this award.
The potential market for an underlying mineral may be considered in determining the degree to which it enhances market value. State Through Department of Highways v. Busch, La.App., 188 So.2d 495. The trial court increased the award for land taken by the sum of $835.20. It appears he did so on the strength of the testimony offered by appellant to the effect that the land possessed some added value as mining property. The slight increase granted in this respect appears justified because the testimony shows that although there was commercial sand beneath subject property, there was little available market for its sale and competition for such market was very keen.
We find that the record does not support the lower court's award of $1,000.00 for timber destroyed on the land taken. The income producing value of growing trees, their usefulness or worth as shade trees, or their aesthetic or ornamental value, may be considered in determining the value of the land on which they are situated. If however, trees are not nursery stock which can be dug and sold in the nature of a crop, they cannot be considered a growing crop, and no award can be made for their value separate and apart from the value of the land itself. State Through Department of Highways v. Black, et al., La.App., 207 So.2d 583; State Through Department of Highways v. Matise, et al., La.App., 170 So.2d 709. The timber in question had no value as a "special crop" or "growing crop". Its value, therefore, may be considered only in determining the *317 value of the land according to its best and highest use. The appraisals of both Driggers and Derbes included the value of the timber taken. The allowance of an extra $1,000.00 for this item of damages must be reversed.
The record is barren of proof of taking of a well and chicken yard, or the value of such items. In several instances, vague references to such items are made by appellant's witnesses, but neither their location nor value are shown. The award for this element of damages must also be reversed.
We concur in the trial court's finding that defendant's western 30 remaining acres sustained no severance damages. This parcel still enjoys its former road frontage on an improved highway. It is still susceptible to the same use it enjoyed prior to the taking.
The contention that defendant is entitled to a connecting underpass is without merit under the circumstances of this case. Such relief in an expropriation case is in the nature of a cost of cure recovery which is allowed only in unusual cases. Reymond v. State Through Department of Highways, et al., 255 La. 425, 231 So.2d 375; State Through Department of Highways v. Mason, 254 La. 1035, 229 So. 2d 89. In this instance, the cost of such a structure would exceed by many times the value of the remaining 19 eastern acres of defendant's land. Granted that use of this remaining acreage is rendered more onerous to its owner because of the circuitous route by which it must be reached, nevertheless the resulting inconvenience to defendant is a nonrecoverable item. Louisiana Highway Commission v. Boudreaux, 19 La.App. 98, 139 So. 521. However, the diminished value of this remaining 19 acres is compensable. In this regard, we find that allowance of severance damages in the sum of $1,425.00, as found by the Department's expert, Derbes, will adequately compensate appellant for the diminution in value of his remaining 19 acres lying east of the new project. We recognize that this award exceeds the Department's deposit of $1,173.00 for severance damages, but larger amounts were found by the Department's experts, Driggers and Derbes, to be due for severance damages to this area. We likewise find these awards will render the landowner whole in this instance. It is unnecessary, therefore, that we consider appellant's claim to entitlement to a connecting underpass.
It is ordered, adjudged and decreed that the judgment of the trial court is amended by reducing the award made therein from the sum of $5,933.20 to $4,185.20, which is itemized as follows: Value of land taken, $2,760.20, and severance damages, $1,425.00. In all other respects, the judgment of the trial court is affirmed; all costs for which the Department may be legally cast shall be paid by the Department.
Amended and rendered.