311 So.2d 5 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Harold W. CLEMENT.
No. 10160.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
*6 Charles E. Pilcher, John F. Sorli, Alva Jones and Johnie E. Branch, Jr., Baton Rouge, for appellant.
Aubrey L. Moore, Baton Rouge, for appellee.
Before SARTAIN, ELLIS and BARNETTE, JJ.
BARNETTE, Judge.
This appeal is from a judgment in an expropriation suit, wherein the State of Louisiana, through the Department of Highways, expropriated 1.065 acres of land in Livingston Parish for highway construction purposes. Suit was filed and the order for expropriation was signed October 14, 1965. The trial judge awarded to Harold W. Clement, the property owner, $14,525.00 for the portion taken and damage to the remainder. The Highway Department had deposited at the time of the taking $3,975.00 for which credit was allowed resulting in a balance of $10,550 plus expert witness fees and other costs. The Highway Department has appealed.
Four appraisers testified as experts, two each for the expropriating Department and the landowner. Their estimates of just compensation for the land taken and for severance and consequential damage to that remaining were respectively as follows:

For the Highway Department
H. Loren Willet $4,358.00
George Platt 6,184.00
For the landowner
Kermit Williams $14,525.00
(alternate estimate
$14,672.00)
Earl R. Graham $18,515.00

Mr. Platt and Mr. Williams are in agreement on the just compensation for the portion taken. Their acreage evaluation of the whole before the taking is identical except as to the portion encumbered with a power line servitude. This accounts in large part for their difference in assessment of severance damage. There is a wide divergence of opinion between them as to the consequential damage to the Clement residence. We will attempt to reconcile their differences in the hope of achieving substantial justice within jurisprudential guidelines.
The trial judge stated that he was "most impressed with the testimony of Mr. Williams" and accepted his estimate of just compensation, $14,525.00. We are more favorably impressed with the testimony of Mr. Platt, whose estimate of $6,184.00 appears to be well supported with logical analysis of comparable sales and sound reasoning in determining the extent of severance damage. We are not at liberty, however, to substitute our impression for that of the trial judge, nor render a different judgment except for substantial reasons. In the absence of manifest error his judgment should prevail. State Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972); State, Department of Highways v. Osbon, 292 So.2d 898 (La.App. 1st Cir. 1974) writ denied 294 So.2d 836; State, Department of Highways v. Spillman, 276 So.2d 905 (La.App.1st Cir. 1973); State, Department of Highways v. Pommier, 270 So.2d 274 (La.App.3d Cir. 1972).
*7 Defendant Clement's homesite, before any encroachment by the electric power line and the highway, consisted of a rectangular tract of land containing 4.955 acres facing approximately east[1] with a frontage of 348.70 feet. The western boundary was 348.12 feet. The north and south boundaries were respectively 615.80 and 622.96 feet.
The property faced a rural residential road identified as 4-H Club Road, near the town of Denham Springs. The Clement residence was approximately 250 feet from the road and located among oak shade trees in the northern half of the rectangular plot. There was an outbuilding described as a tool shed or storage house, a crib, a dog pen and some fencing. A gravel driveway runs from 4-H Club Road to the dwelling. In general it was an attractive, rather modest, rural homesite.
The taking of the property in question was for right-of-way for Interstate Highway 12. Proceeding in a generally easterly direction from the Amite River bridge the highway begins an incline to the height necessary to overpass the 4-H Club Road. It is at this point that it traverses the Clement property. The part taken off the north side of the rectangular plot was 1.065 acres, triangular in shape. The long side of the triangle is 535.84 feet measured from the northwest (rear) corner of the property. This brings it to a point 79.96 feet back from the frontage on 4-H Club Road. The other leg of the right triangle runs along the rear line of Clement's property, parallel to 4-H Club Road a distance of 151.13 feet measured from the northwest corner. The hypotenuse of the right triangle, being 562.91 feet, is approximately (but not perfectly), a straight line connecting the ends of the two legs of the triangle. At the point where this line traverses nearest Mr. Clement's house, the distance from the right-of-way to the nearest corner of the house is twelve feet. At this point the right-of-way line is 114 feet from the pavement of the east bound traffic lane, and therefore, Clement's house is 126 feet from the nearest traffic lane.
The nearness of Mr. Clement's dwelling to the line of moving traffic going up an incline to reach the level of the 4H Club Road overpass is a factor to be considered in determining severance and consequential damage. All the experts took this into account but their conclusions as to extent of damage resulting from traffic noise, impairment of view and privacy, varied from 25 to 80 per cent, experts Willet and Platt, the Department's appraisers, taking the lower estimate and experts Williams and Graham, the landowner's appraisers, using the 80 per cent estimate of damage. The difference in their respective estimates of damage to the dwelling resulted from the variance in their appraisals of the depreciated value of the house before the taking.
Their before-taking appraisals of the dwelling based on the estimate of cost, depreciated for years of use in proportion to the estimated remaining years of usage of the dwelling, not including storage shed, fences, driveway, etc. were as follows:

Willett $8,493, Less
 20% depreciation $6,794
Platt $10,243, Less
 14% depreciation $8,809
Williams[2] $10,094, Less
 30% depreciation $7,066
Graham2 $10,540, Less
 25% depreciation $7,909

It should be noted that there is no great difference in these appraisals and the highest *8 and most favorable one from the landowner's standpoint is that of Mr. Platt, a Highway Department expert appraiser and witness.
A prior suit for expropriation of a power line right-of-way across the subject property was filed in March 1964 by Gulf States Utilities Company against this landowner, resulting in a judgment March 21, 1966, granting a perpetual servitude of right-of-way across the southern 150 feet of this 4.955 acre plot. This reduced Mr. Clement's unencumbered frontage on 4H Club Road from 348.70 feet to 198.70 feet, approximately 43 per cent. For this Mr. Clement was awarded $4,293 for the 2.12[3] acres included in the right-of-way and $636.75 in severance damages.
The trial judge in that case found the value of Clement's property before the taking to be $2,250 per acre. The award for the servitude was 90 per cent of the fee value and the severance damage award was 10 per cent of the value of the unencumbered portion remaining.
The expert Williams, whose appraisal the trial judge adopted as the basis of his judgment, did not take into account that the 4.955 acre tract had already been encumbered to the extent of 2.123 acres (43 per cent) by the power line right-of-way and for which Clement had been paid 90 per cent of fee value. Mr. Williams placed a $2,500 per acre value on the 4.955 acres without exception as to the encumbered portion. This, we think, was wrong, and the trial judge in accepting this appraisal fell into serious error.
Clement's other expert witness, Earl R. Graham, committed the same error. He appraised the 4.955 acres, before the taking at $3,250 per acre and made no exception for the 43 per cent encumbered for which the landowner had already been compensated.
By contrast, the Highway Department's expert appraisers took into account the encumbrance of the south 150 feet embraced in the power line right-of-way. Mr. Platt appraised the unencumbered portion (2.823 acres) at $2,500 per acre (the same as Williams) and the encumbered portion (2.132 acres) at $1,250 per acre.
Mr. Willet, the Highway Department's other expert, took a somewhat different approach. He divided the 4.955 acre plot into three parts for the purpose of appraisal. The unrestricted frontage to a depth of 350 feet he appraised at $2,750 per acre, plus contributing value of $900 for landscaping. The unrestricted portion beyond the 350 feet, he appraised at $1,000 per acre. The portion encumbered by the power line right-of-way he appraised at $850 per acre.
The opinions of all experts regarding value of property in expropriation proceedings, when well supported by evidence and grounded on substantial and logical reasoning, should be given consideration by the Courts. If they are equally well grounded and reasoned they are entitled to equal consideration. Lafayette Airport Commission v. Roy, 265 So.2d 459 (La.App.3rd Cir. 1972), writ refused 262 La. 1159, 266 So.2d 444 (1972); Parish of East Baton Rouge v. S. & H. Heating Company, Inc., 216 So.2d 360 (La.App. 1st Cir. 1968).
On the other hand when an expert appraiser's opinion is not well grounded in logical reasoning or supported by acceptable evidence, such as good comparables, the Court may disregard it, and follow those which are well grounded and logically reasoned. State, Department of Highways v. D. H. Sanders Realty Company, Inc., 244 La. 934, 155 So.2d 24 (1963); State, Department of Highways v. Barber, 238 La. 587, 115 So.2d 864 (1959); Lafayette Airport Commission v. Roy (supra); State, Department of Highways v. Rapier, 152 *9 So.2d 272 (La.App. 1st Cir. 1963) judgment amended 246 La. 150, 164 So.2d 280 (1964). Especially would this be justified when his opinion is so at variance from the other experts as to appear unrealistic.
Following these jurisprudential guidelines we have given equal consideration to the opinions of experts Willet, Platt and Williams and have disregarded the opinion of Mr. Graham.
Appraisers Willet, Platt and Williams used the same three comparables and Mr. Williams used four additional ones. The three which they all used were good comparables from standpoint of size of plots, location and time of sale. Willet and Platt each made reasonable and sound adjustments to compare with the subject property, but Mr. Williams only struck an average per acre value. The four additional ones used by Mr. Williams were not as comparable because of size of plots and location. But this difference in use of comparables is a matter of discretion and personal judgment, and does not of itself render Mr. Williams' appraisal less worthy of our consideration.
The expert Earl R. Graham, who testified on behalf of the landowner, expressed a personal knowledge of the subject property for thirty years and said that he tried to purchase it in 1926 and 1928 because he was especially attracted to it, saying: "I was trying to buy the property because I thought it was one of the most gorgeous pieces of property that I had ever looked at." He said he was "* * * higher (in his appraisal) than everybody else because maybe I am a little partial to this piece of land." This partiality is reflected in his land value appraisal of $3,250 per acre across the board without regard to the encroachment of the power line servitude, which was $750 per acre more than the next highest appraisal. His vivid description of the noise from the traffic on the highway and his testimony in general gives the impression of exaggeration, all of which has been taken into account.
We think it too obvious to be seriously contradicted that the 2.12 acres (computed at 2.132 acres by expert Platt) encumbered with a perpetual servitude for electric power line was of substantially less value than the unencumbered remainder of the 4.955 acres before the Highway taking. Furthermore Mr. Clement's position in this regard is inconsistent on its face. Having accepted compensation at 90 per cent of the fee value of the part taken, based we assume on the damage and restriction of use which was imposed by the power line, he cannot now seriously contend that it has the same value as the rest of his acreage which was not so damaged. Therefore we will accept the appraisal of $1,250 per acre placed on this portion by the higher of the Department's two experts, Mr. Platt. (The other Highway Department's witness, Mr. Willet, appraised this portion at $850 per acre).
Both Mr. Platt and Mr. Williams appraised the remaining acreage, before this taking at $2,500 per acre, on the basis of which they each valued the 1.065 acres taken at $2,663.
The trial judge did not abuse his discretion in accepting the appraisal of Mr. Williams and his formula for computing severance and consequential damage at 50 per cent to the land and 80 per cent to the dwelling. The error was committed by Mr. Williams in giving the same evaluation to the 2.132 acres of encumbered land that he gave to the unencumbered portion, namely $2,500 per acre. Except for this difference his appraisal of the land and that of Mr. Platt were identical. We will therefore accept the appraisal of Mr. Platt as to the land and will accept, as did the trial judge, the dwelling appraisal of Mr. Williams and his formula for computing severance and consequential damage.
Accordingly we accept the $7,060 after-taking value of the remaining acreage, less severance damage, as found by Mr. Platt, which we will depreciate by 50 per cent according to the Williams formula. Thus *10 the severance damage to the remaining acreage is $3,520. To this we add the $2,663 found by both Platt and Williams for the portion taken. The total for the land taken and severance to that remaining is $6,183.
All the witnesses agree that the highest and best use of the subject property is rural residential. They further agree that the closeness of Mr. Clement's residence to the Interstate Highway, with its attendant noise from trucks ascending the grade and other traffic approaching the 4-H Club Road overpass materially depreciates the residential value of the house. It is further evident, and all agree, that the roadway embankment beginning at a point only twelve feet from the house and rising up to the pavement of the east bound traffic lane is a substantial consequential damage to the residential value of the property. There can be no doubt that the property has lost much of its attractiveness and appeal as a homesite. Its resale value for its highest and best use has been substantially reduced. As stated above, the Department's two appraisers estimated this damage to be 25 per cent and the landowner's witnesses fixed it at 80 per cent.
We think 25 per cent is too low an estimate but 80 per cent seems to us to be very high. Had we been called upon to make the initial judgment on this issue it would have been somewhere between these estimates. But we must give weight to the judgment of the trial judge in accordance with jurisprudential standards and we cannot say that he committed a manifest error in this regard.
Mr. Williams, in computing the 80 per cent damage, included the storage shed, fences, miscellaneous walks, drives, etc. with the residence for this depreciation. Obviously the storage shed, dog pen, crib, fences, walks and driveway were not damaged by severance, nor did they suffer damage as a consequence of exposure to noise, loss of privacy and impairment of view. Their value should not have been included in the residence value for the purpose of computing this damage. This was improper in our opinion, and the trial judge who adopted this computation of damage was therefore in error.
The appraisal of the dwelling by Mr. Williams, exclusive of the other improvements mentioned was $7,066. The damage computed at 80 per cent is $5,652.80. To this we add $6,183 for the land taken and damaged and $220 for fence taken. The total amount for just compensation we find to be $12,055.80.
The before and after values of the remaining 3.89 acres according to expert Willet's appraisal were $4,969 and $4,442. The difference $527, would therefore be the severance damage to the 3.89 acres remaining after the taking. His estimate of damage to the primary dwelling and related improvements was $1,848 making a total of $2,375 for all severance and consequential damage. This would not, in our opinion, justly compensate the landowner.
We have relied chiefly on the appraisals and expert opinions of Mr. Platt and Mr. Williams and have attempted to reconcile their differences in the hope that we might do substantial justice.
For these reasons the judgment of the trial court is amended by reducing the award to Harold W. Clement for just compensation from $14,525.00 to $12,055.80, subject to credit of $3,975.00 deposited in the registry of the Court. In all other respects it is affirmed.
The defendant, appellee, is cast for the cost of this appeal.
Amended and affirmed.
NOTES
[1] Map included in Mr. Williams' appraisal report (Exhibit D-15 p. 5) has a directional arrow superimposed over a photo copy of map indicating north in the direction indicated as east on all other maps and exhibits. This is evidently an error.
[2] Williams and Graham depreciated the total of all improvements, shed, driveway, fences, etc. The figures here are computed on their respective dwelling appraisals only.
[3] In other appraisals this figure is 2.132 acres which appears to be correct.