227 So.2d 606 (1969)
MICHIGAN WISCONSIN PIPELINE COMPANY
v.
Eula Mae FRUGE.
No. 2788.
Court of Appeal of Louisiana, Third Circuit.
September 8, 1969.
Rehearing Denied October 22, 1969.
Second Rehearing Denied October 23, 1969.
Writ Refused January 9, 1970.
*608 Shotwell, Brown & Sperry, by Burt W. Sperry, Monroe, and Edwards, Edwards & Broadhurst, by Nolan J. Edwards, Crowley, for plaintiff-appellant.
Pugh, Buatt, Landry & Pugh, by Lawrence G. Pugh, Jr., Crowley, for defendant-appellee.
Before TATE, FRUGE and CULPEPPER, Judges.
CULPEPPER, Judge.
This is a companion case to Michigan Wisconsin Pipeline Company v. Elroy Hebert, La.App., 227 So.2d 615 and Michigan Wisconsin Pipeline Company v. Clifford Hebert, La.App., 227 So.2d 616, in which separate decisions are being rendered by us this date. In these three consolidated cases plaintiff seeks to expropriate a servitude across farm lands owned by defendants, for the construction of a 26 inch high pressure natural gas pipeline. The district judge granted the expropriation and awarded compensation and damages. Plaintiff appealed, seeking to reduce the awards and also to remove certain restrictions from the servitude. Defendants answered the appeals, seeking both the denial of the right to expropriate and, alternatively, increases in the awards.
The general facts are that the three defendants are brothers and sister who own adjoining tracts of land, whose best use is for rice farming. Plaintiff owns an existing 26 inch natural gas pipeline across defendants' rice fields. The new servitude is for a loop line, to be constructed parallel to and 25 feet from the existing pipeline. For this purpose plaintiff seeks to expropriate a permanent servitude 50 feet in width and an additional temporary construction servitude 25 feet in width.
EXCEPTION OF NONJOINDER:
In their answers to the appeals defendants reurge an exception of nonjoinder of an indispensable party. The basis of this exception is that Vorice Hebert, a brother of the defendants, has leased the land in question since about 1942 for the purpose of growing rice on a sharecrop basis, 4/5 interest to the lessee and 1/5 to the lessors. The lease for the present year was not reduced to writing nor recorded until June 26, 1967, which was 11 days after these three expropriation suits were filed on June 15, 1967. In addition to the leases, there is an instrument dated August 31, 1965 and recorded on September 2, 1965 whereby the defendant landowners granted to Vorice Hebert a servitude to construct irrigation canals across the properties in question.
Defendants contend that by virtue of the rights owned by Vorice Hebert under the leases and the servitude for irrigation canals he is an indispensable party to this litigation.
The issues raised in the exception of nonjoinder have already been considered and decided by this court when these cases were previously before us. See Michigan Wisconsin Pipeline Company v. Fruge, La. App., 210 So.2d 375 (3rd Cir. 1968). We held there that Vorice Hebert is not an indispensable party. That solely because of the servitude which he owns for the construction of irrigation canals he may be a necessary party. See LSA-CCP Articles 641-647. We remanded the case to allow Vorice Hebert to assert any rights for damages to his irrigation canals. The record now before us on appeal does not show that Vorice Hebert has been made a party to assert any such rights. Accordingly, the district court judgment denying the exception of nonjoinder is affirmed.
EXCEPTION OF PREMATURITY:
Defendants also reurge an exception of prematurity based on the grounds that the expropriating authority did not *609 conduct bona fide negotiations with the landowners prior to the institution of this suit. This question has also been considered and decided by us in the previous appeal, Michigan Wisconsin Pipeline Company v. Fruge, supra. Accordingly, the district court judgment denying the exception of prematurity is affirmed.
NECESSITY OF EXPROPRIATION:
Defendants next contend plaintiff failed to establish the expropriation is necessary for the public convenience. Without detailing the evidence, it is sufficient to state that plaintiff proved it is a Delaware corporation authorized to do business in Louisiana as a natural gas company, U.S.C.A. Title 15, Section 717 (a) and (b), with the power to expropriate. The Federal Power Commission issued plaintiff certificates of public convenience and necessity to construct the proposed loop line to transport natural gas from the State of Louisiana to a point in the State of Michigan. Plaintiff's officers and engineers testified as to the public convenience and necessity, as well as the route chosen. There is no evidence submitted by defendants to the contrary. Hence, we affirm the district court judgment granting the expropriation sought.
THE TRIAL COURT AWARDS:
The principal issues on appeal concern the amounts of the awards for compensation and damages. The awards by the district judge were as follows: Eula Mae Fruge, compensation for the servitude taken$625, damages$250, total$875; Elroy Hebert, compensation for the servitude taken$3,975, damages to the land $1,590, damages to rice crop$1,590, total $7,155; Clifford Hebert, compensation for the servitude taken$3,000, damages $1,200, total$4,200.
VALUATION OF SERVITUDES TAKEN AND SEVERANCE DAMAGES:
Plaintiff's principal complaint is that the district court award for the value of the servitude taken is not based on comparable sales which show the property to have a value of $400 to $500 per acre in fee but, instead is based on alleged comparable sales of 29 servitudes for gas pipelines. Defendants' two expert appraisers, Mr. A. Byron Core and Mr. Stanley A. Tiger, used these comparable sales of similar servitudes to estimate a value of $50 per rod for the servitude taken. In his written reasons for judgment, the district judge states $50 per rod is too high. Nevertheless, he apparently followed the reasoning of defendants' experts to some extent in awarding for the value of the servitude taken, together with severance damages, an amount considerably in excess of that which could be justified on the basis of a value of $500 per acre in fee.
The plaintiff called two expert real estate appraisers, Mr. Maurice Chappuis and Mr. Marion Edwards, both of whom are highly qualified. Although there are minor variations in their respective appraisals, their testimony can be summarized as follows: Based on several recent comparable sales, the lands of Clifford and Elroy Hebert, which front on public roads, have a fee value of $500 per acre. The land of Eula Mae Fruge, being an interior tract with no road frontage, is valued at $400 per acre. After the taking, the fee burdened with the servitude will have a remaining value of $100 per acre, which means that the value of the servitude expropriated is $400 and $300 per acre respectively. Defendants suffered no severance damage to the land outside the servitude because there is already an existing pipeline; the new pipeline will be buried to a depth of 30 inches below the surface and will not interfere with the continued use of the property to grow rice; and, furthermore, their experience in the sale of rice farms has shown that the presence of pipelines across such property does not reduce the market value. These two experts allowed 10% of the fee value as a rental for the temporary work space.
Defendants also called two expert real estate appraisers, Mr. A. Byron Core and *610 Mr. Stanley A. Tiger. These witnesses agreed with plaintiff's experts that comparable sales of rice farms showed the land to have a fee value of between $400 and $500 per acre. However, they chose not to use these comparable sales in determining the value of the servitudes taken and any severance damage to the remaining property. Instead, they were of the opinion that the best way to determine the value of servitudes for pipelines, and any severance damage, caused thereby, is to use comparable sales of servitudes to expropriating authorities. Based on 29 different acquisitions of servitudes by pipeline companies, Mr. Core and Mr. Tiger concluded that for a servitude and a pipeline of this size the value of the rights expropriated, together with any severance damage, is $50 per rod.
Although there are certain minor variations between them, the appraisals of Mr. Core and Mr. Tiger for the servitudes expropriated, together with severance damages caused thereby, can be summarized as follows:
1) Eula Mae Fruge, 24.42 rods at $50 per rod, $1,221;
2) Clifford Hebert, 120.04 rods at $50 per rod, $6,002;
3) Elroy Hebert, 159.34 rods at $50 per rod, $7,967.
The principal question of law presented is whether defendants' experts, Mr. Core and Mr. Tiger, were justified in basing their valuation of the servitude taken and severance damages on comparable sales of similar servitudes to expropriating authorities. Defendants cite Gulf States Utilities Company v. Norman, La.App., 183 So.2d 421 (3rd Cir. 1966), writs denied 249 La. 118, 185 So.2d 529, as authority for the use of such comparables.
Gulf States Utilities Company v. Norman, supra, is readily distinguishable from the present case. There the evidence showed no recent sales of similar property to establish market value between a willing buyer and a willing seller. Hence, we did consider sales to expropriating authorities in reaching a valuation. However, our decision first states "The Louisiana jurisprudence is uniform in holding the best criterion of the value of the property taken is evidence as to the price paid in comparable sales, i. e., recent sales of similar property in the vicinity; for such sales usually more accurately indicate the willing seller-willing buyer value than a figure derived by other more theoretical approaches." (Citations omitted) As to sales to expropriating authorities we recognized that in Louisiana, unlike many jurisdictions, such sales may be considered but "such sale is not controlling, since being made under threat of expropriation it is not a willing seller transaction." (Citations omitted)
In the present case defendants' own experts, Mr. Core and Mr. Tiger, admit there are sufficient comparable sales to fix the fee value at about $500 per acre. This is the best evidence of market value. We will use this valuation as more accurately showing true willing-seller and willing-buyer market value and will award compensation for the servitudes taken on this basis.
As stated above, plaintiff's experts testified there are no severance damages. Defendants' experts included severance damage in their overall evaluation of $50 per rod but gave no basis for separate calculation of such damages.
Our jurisprudence is established that severance damages to the remaining property cannot be presumed and will not be awarded unless the owner shows by competent evidence that the value of the remaining land has been diminished by the taking. Texas Gas Transmission Corporation v. Young, La.App., 194 So.2d 453 (3rd Cir. 1967). The measure of severance damages is the difference between the value of the remaining property before and after the expropriation. Texas Gas Transmission Corporation v. Thibodeaux, La. *611 App., 148 So.2d 337 (1st Cir. 1962). The landowner has the burden of proving not only that severance damages have been sustained but also the amount thereof. State Department of Highways v. Reuter, La.App., 175 So.2d 316 (4th Cir. 1965).
Defendants cite Veillon v. Columbia Gulf Transmission Company, La.App., 192 So.2d 646 (3rd Cir. 1966), where a second pipeline was also involved. We affirmed there a trial court award of 5% diminution in market value as severance damages, based on testimony of the landowners' experts that this loss was 10%. Defendants say we should at least award the same amount, i. e., 5%. The case is distinguished. There the evidence furnished a basis to compute severance damages. Here there is no such evidence. We cannot resort to pure conjecture. Severance damages are denied.
COST OF RELEVELING RICE FIELDS:
Defendants contend that after the construction of the pipeline the entire rice fields across which the line runs must be releveled. They point out that the trench required for a 26 inch line is approximately 5 feet deep and 3½ feet wide. A large amount of soil must be removed and disturbed. After the trench is filled, a large mound will be left over the excavation. The irrigation levees run generally east and west and the pipeline north and south. All levees will be cut. They say that due to the extra dirt, to the cutting of all the irrigation levees and to the great disturbance of the soil within the right of way, the entire fields must be releveled.
Mr. Ashton Petitjean, a rice farmer of many years experience, testified the cost of releveling the fields would be $25 to $35 per acre. Mr. Vorice Hebert, also an experienced rice farmer, and the lessee of the land in question here, testified it would be necessary to relevel the entire fields. He estimated the cost at $25 per acre to relevel and gave the following figures:
1) Clifford H. Hebert, 77 acres at $25 $1,925;
2) Eula Mae Fruge, 13 acres at $25 $325;
3) Elroy Hebert, 89 acres at $25$2,225
Plaintiff's expert witness, Mr. David Black, an agricultural consultant, testified that only the land within the boundaries of the servitude need be releveled. He estimated a cost of $40 per acre to plow, disc, relevel, fertilize and restore the land within the right of way.
Plaintiff also called Mr. Amson Duhon, a rice farmer on whose land Mr. Black conducted an experiment to show that after the construction of a pipeline only the land within the right of way need be releveled. Mr. Duhon testified he assisted Mr. Black during the experiment and that it is not necessary to relevel the entire fields.
We find defendants' evidence more persuasive and conclude the entire fields must be releveled. See Texas Gas Transmission Corporation v. Klumpp, La.App., 137 So.2d 123 (3rd Cir. 1962); and Texas Gas Transmission Corporation v. Pierce, La.App., 192 So.2d 561 (3rd Cir. 1966) where similar awards were made. We will allow the cost of releveling the entire fields as stated by defendants' witness, Mr. Vorice Hebert.
LOSS OF RICE CROPS:
At the time of the trial on August 7, 1967, the vice had already been harvested from the lands of Clifford Hebert and Eula Mae Fruge. The rice crop on the land of Elroy Hebert was still in the field. Mr. Black, plaintiff's agricultural expert, estimated the crop at 25 barrels per acre with a value of $8 per barrel and concluded crop damage on the 4.5 acres in the combined temporary and permanent servitudes at $900. Defendants' witness, Mr. Vorice Hebert, testified he made 31½ barrels per acre that same year on similiar property. Using Mr. Vorice Hebert's estimate *612 as the more reliable we conclude that the loss of the rice crop on the 4.5 acres of Elroy Hebert is $1,134.
Another item of damages, pertaining to the rice crop, is the loss of the rice stubble within the right of way for feed for cattle. Mr. Black, plaintiff's own witness, allowed damages for this item as follows:
Eula Fruge$5;
Clifford Hebert$35;
Elroy Hebert$36
Additionally, defendants contend that after the harvesting of the first rice crop, they would have made a second crop, except for the fact that their irrigation levees will be cut by the construction of the pipeline. A reading of the testimony shows that second rice crops are rarely productive. We conclude the evidence is insufficient to support any damages for loss of a second rice crop.
DAMAGE TO IRRIGATION CANALS:
The final item of damages is that caused to three lateral irrigation canals. The only testimony in the record in this regard is that of Mr. Vorice Hebert, who estimated it would cost about $125 to restore each canal. Each defendant will be awarded $125 for the canal on his property.
SUMMARY OF COMPENSATION AND DAMAGES:
Summarizing, we conclude that defendants are entitled to compensation and damages as follows:

1) Eula Mae Fruge:
 Permanent servitude, .46
 acres at $300 $ 138.00
 Temporary servitude, .23
 acres at 10% of fee 9.20
 Land leveling, 13 acres at
 $25 325.00
 Rice stubble 5.00
 Damage to irrigation canal 125.00
 ______
 Total $ 602.20
2) Clifford Hebert:
 Permanent servitude, 2.2
 acres at $400 $ 880.00
 Temporary servitude, 1.2
 acres at 10% of fee 60.00
 Releveling, 77 acres at $25 1925.00
 Rice stubble 35.00
 Damage to irrigation canal 125.00
 _______
 Total $3025.00
3) Elroy Hebert:
 Permanent servitude, 3
 acres at $400 $1200.00
 Temporary servitude, 1.5
 acres at 10% of fee 75.00
 Releveling, 89 acres at $25 $2225.00
 Rice crop 900.00
 Rice stubble 36.00
 Irrigation canal 125.00
 ________
 Total $4561.00

EXPERT WITNESS FEES:
Defendants request the fees allowed their expert witnesses be increased. Mr. Core and Mr. Tiger testified they should receive $300 per case, plus $125 per day for the two-day trial, or a total of $1150 each. The trial judge allowed only $200 per case and $75 per day for each of these experts. Also, Mr. Stevens requested $200, but the court allowed only $100. In view of the large discretion allowed the trial judge in these matters we find no manifest error.
RESTRICTIONS ON THE SERVITUDE:
The final issue concerns certain restrictions which the district court judgment places on the servitude granted. These limitations are identical to those set out in plaintiff's petition for the expropriation, with the exception of those designated in the Judgment as G-1 through G-6, which were added. These added limitations, for the most part, duplicate those in plaintiff's petition. However, there are certain new limitations requiring the pipeline to be laid at certain depths below irrigation canals and requiring certain fences, posts, etc. Counsel for plaintiff correctly states there is no evidence to *613 justify these additional limitations. Accordingly, the trial court judgment will be amended so as to delete therefrom the limitations designated G-1 through G-6.
For the reasons assigned, the judgment appealed is amended to (1) reduce the award to Eula Mae Fruge to $602.20 and (2) delete the limitations on the servitude designated G-1 through G-6. Except for these amendments, the judgment is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed, as amended.

ON APPLICATION FOR REHEARING
Before TATE, FRUGÉ, SAVOY, HOOD and CULPEPPER, JJ.
PER CURIAM.
The defendant applied for a rehearing on several grounds, two of which require discussion.
First, defendant points out that in the discussion of the exception of nonjoinder in our original opinion, we stated the record does not show that after this case was remanded Vorice Hebert (the lessee) was made a party. Apparently, this is erroneous. Although it is not indexed, there is attached at the end of one of the volumes of this record a petition, filed by the plaintiff on September 3, 1968, requesting that Vorice Hebert be made a party defendant for the purpose of determining the amount of damages to his irrigation canals. Defendant filed certain exceptions to this petition. A minute entry, (attached to the application for rehearing but not contained in the record) shows that a hearing was held on March 12, 1969, and later it was stipulated that Vorice Hebert suffered damages in the sum of $430.
Nevertheless, there is no signed judgment awarding damages to Vorice Hebert. Where there is no formal judgment read and signed by the judge, an attempted appeal therefrom must be dismissed as premature, LSA-C.C.P. Articles 1911 and 2083; Grigsby v. Hamilton, La.App., 211 So.2d 699; Kleb v. Choate, La.App., 203 So.2d 422. Accordingly, the appeal as to Vorice Hebert must be dismissed without prejudice.
The second matter requiring discussion is an error in computation in our original opinion. Under the discussion of "Loss of Rice Crops" we found Elroy Hebert is entitled to $1134 for this item of damages. However, in the "Summary of Compensation and Damages" we erroneously listed this item for Elroy Hebert as "$900", instead of $1134. Accordingly, our original decision herein must be amended to show that Elroy Hebert is entitled to $1134 for the loss of his rice crop and that his total damage for all items is the sum of $4795, instead of $4561.
For the reasons stated, our original decision is amended to (1) dismiss the appeal as to Vorice Hebert without prejudice and (2) show that Elroy Hebert is entitled to total damages in the sum of $4795.
With these amendments to our original decision, defendant's applications for rehearing in these three companion cases are denied.
FRUGÉ, J., votes for rehearing.
TATE, Judge (dissenting from denial).
The writer respectfully dissents from the denial of rehearing.
The writer feels, as did the trial court, that severance damages have undoubtedly been sustained by the subject properties. We disallowed them in our majority opinion, because the trial court allowed them upon the wrong legal theory. Therefore, any evidence proving them does not fit the before-and-after formula presently recognized as the most appropriate basis for determining them.
Under these circumstances, we should remand, as alternatively requested in the application for rehearing.
*614 In the present instance, the trial court based its award on comparable sales of pipeline utility servitudes in the vicinity. These sales were undoubtedly armslength transactions and the result of bargaining. They undoubtedly reflect, as the trial court held, the true value of the land sold for servitude purposes together with severance damages to the remainder. In our majority's deduction from the trial award, so as to allow for land-taken value only, we disallow severance damagesin effect, the differential between the trial award and ours.
The majority opinion reaches this result because, under the jurisprudence, the best evidence of value is based on comparable sales and before-and-after values. Sales of servitudes to expropriating authorities are admissible, but they are not controlling. Where there are no comparable sales, however, they may indeed even under the jurisprudence be the best guide to value. Gulf States Utilities Co. v. Norman, La.App.3d Cir., 183 So.2d 431.
Since, commonsensically, an armslength hotly-bargained voluntary sale of a pipeline servitude is the best guide to value, why not allow this data to be more determinative than the highly theoretical use of alleged comparables sold for other purposes and at other times? This question was raised at our conference before rendition of the original majority opinion.
We concluded that the reason the jurisprudence does not adopt this commonsense approach is probably founded on the possibility that voluntary agreements as to these servitudes might thus be inhibited. If the large institutional expropriators felt that the prices offered for servitudes, however reasonable, might be used as a floor for awards in formal expropriation proceedings, the voluntary payment of reasonable prices for the servitudes might be discouraged. Litigation to obtain servitudes, and to obtain fair prices for them, might become the rule rather than (as now) the exception.
In any event, this court is required to follow the Supreme Court jurisprudence on the matter. This requires us to utilize comparable sales rather than to allow the market value of servitudes to guide the award, even in instances where the latter reflects the most realistic valuation of the servitude and severance damages.
In the present case, we were thus forced to reject the landowner's evidence, which did reflect severance damages but not in acceptable formulae. Thus, the only evidence on the question left was that of the pipeline's experts. They as usual felt that no additional severance damage is caused by the addition of additional pipelines burdening the land, although in an unbroken line of decisions this court has reached a different conclusion. See Michigan Wis. Pipe L. Co. v. Sugarland Development Corp., La.App.3d Cir., 221 So.2d 593, certiorari denied, and decisions cited at 221 So.2d 596.
It seems to me that the interests of justice require remand and a chance for the landowner to prove the severance damages she has undoubtedly sustained. LSA-C.C.P. Art. 2164. When evidence is incorrectly admitted by the trial court, as a result of which a party produces no further proof, the appellate court will generally remand if it rules the evidence relied upon to be inadmissible, in order to prevent prejudice to the party through his mistaken reliance upon the trial court's (incorrect) ruling. Manuel v. American Employers Insurance Co., La.App.3d Cir., 212 So.2d 527. For similar reasons, we should here remand, since we disagree with the trial court ruling as to suitable evidence of severance damages, upon which ruling the landowner relied below.
It should also be noted that the landowner-appellee's application for rehearing raises a non-frivolous contention as to the failure, upon the first remand (see Michigan Wisconsin Pipe Line Co. v. Fruge, La. App., 210 So.2d 375), to follow correct procedures with regard to joinder of a necessary party, including re-trial. The *615 absence of this necessary party had been raised by timely filed declinatory exception in the trial court. I do not now discuss the matter, except to say that a remand would permit correction of the errors complained of in this respect.
For the reasons assigned, therefore, I respectfully dissent from our denial of rehearing, feeling that we should grant same to permit remand for further proceedings.