TUCKER, Judge.
This is a suit by Dixie Electric Membership Corporation, a Louisiana non-profit membership corporation, organized under Louisiana Revised Statutes 12:401-430, and engaged in the business of transmitting and distributing electricity for power, lighting, heating, or other such uses, in a number of parishes in the State of Louisiana. Plain *325 tiff Dixie Electric sought to expropriate a hundred foot right-of-way in the northern portion of Livingston Parish for the purpose of a 69KV transmission and distribution servitude to give better service in the Watson to Holden, Louisiana area.
A description of the proposed installation taken from the testimony of Mr. Floyd Barbay, the consulting electrical engineer who designed the transmission line in question, is given below:
The section of the 69KV transmission line running across the property to be expropriated consists of a single pole type of construction with two crossarms at the top. The basic pole is sixty feet tall. It is southern yellow pine, creosoted. The typical pole has a crossarm at the top which is eight feet long, and which is placed 3.S feet from the top of the pole. There is a six foot space beneath it, and between it and the next crossarm which is ten feet long. There is a string of four bells which extends along the crossarms to hold three conductors. The wire is about forty feet above the ground, and the poles are about three hundred feet apart. The pole being sixty feet tall and about sixteen inches in diameter at ground level, is buried eight feet in the ground, with the result that it extends about fifty-two feet into the air. There is one conductor on the tip-top of the pole, which is known as the static. The construction of the wire at this point is three-eights of an inch in diameter, made of high strength steel. Its primary purpose is to drain off any static charges or lightening charges which might hit the line. This line protects the three conductors which are located beneath it, one conductor on the top crossarm, and two conductors on the bottom crossarm. The wires that carry the “hot electricity,” the phase conductors, are 336-400 MCM aluminum, known as 86SR. They have twenty-six strands of aluminum and seven strands of steel. The minimum clearance of this line is twenty-seven feet, although the code calls for only twenty-one feet in an area accessible to pedestrians.
The suits brought by Dixie Electric to expropriate the surface needed for its servitude were consolidated for trial, and judgment was given for Dixie Electric granting the right of servitude and awarding judgments in favor of the several defendants, in varying amounts, for the surface rights expropriated and for severance damage caused to the remainder. Ten of these defendants have appealed or answered the appeal taken against them by Dixie Electric. The right to expropriate by Dixie Electric was not questioned on appeal. The sole question in each appeal centers around the amount of the award made for the surface rights taken and for various and sundry items of damage.
In the instant case judgment was rendered by the trial court granting a right-of-way to Dixie Electric across defendant’s property, which is a tract containing 80 acres of land. The servitude in question encompasses 2.41 acres within the right-of-way. It is,, more particularly described as follows:
“A certain tract or parcel of land situated in the south one-half of Section 33, T-S-S, R-4 — E, Livingston Parish, Louisiana, and being more particularly described as follows: Commence at the southeast corner of Section 33., T-5-S. R-4E, thence S 89° 47' W 14.95 chains; thence north 6.667 chains; thence S 89° 47' W 5.0 chains to a point, said point being the southeast corner of the property of Stanley H. McLin, Jr.; thence continue S 89° 47' W along the southern property line of Stanley H. McLin, Jr. a distance of 1242.16 feet to a point, and the Point of Beginning; thence N 68° 26' W 1149.87 feet to a point on the west property line of Stanley H. McLin, Jr.; thence south 107.53 feet along the west property line of same to a point; thence S 68° 26' E 860.13 feet to a point on the south property line of Stanley H. McLin, Jr.; thence N. 89° 47' E 269.47 feet along the *326 southern property line of same to Point of Beginning;, containing 2.41 acres more or less.”
Judgment was also granted by the trial court awarding defendant $1,807.50 as compensation for the property expropriated; $1,099.13 in addition for the timber located on the servitude; and a further sum of $1,000.00 for severance damages. The expert witness fee of Earl R. Graham was fixed at $500.00 and taxed as costs of court.
Dixie Electric has appealed from this judgment alleging as error the action of the trial court in evaluating the property expropriated at $750.00 per acre; in awarding the defendant landowner the full fee value of the land expropriated; in awarding an additional sum for the timber located on the servitude; and in awarding severance damages. Defendant has answered this appeal, seeking an increase in judgment.
No oral or written reasons for judgment were given by the trial judge. Simple arithmetic indicates, however that $750.00 per acre, borne out by a supplemental per curiam of the trial court, was the basis for the award made in this suit as in eight of the Dixie Electric suits consolidated for trial. We do not believe the evidence justifies such a blanket .award, and do not understand the method by which this figure was reached, especially in view of the fact that Earl R. Graham, expert witness for nine of the defendants in these consolidated cases, appraised the land at trial for $1,000.00 per acre, while Dixie Electric’s appraiser, James C. Carpenter, appraised it at $333.33 per acre. Averaging estimates of expert witnesses, or drawing a mean between or among them, has never been considered a sound basis for judgment in the expropriation suits of this state. We can find no reasonable basis in the record for the trial court’s evaluation per acre of the land expropriated.
We remain unconvinced by the defendant’s expert witness, Earl R. Graham, who was employed by the defendant a few days before the trial began and gave defendant’s property only a cursory examination. Our inability to rely upon the findings of Mr. Graham as an expert witness has been well expressed by us in three other cases this day decided; Dixie Electric Membership Corp. v. Kinchen, La.App., 280 So.2d 332; Dixie Electric Membership Corp. v. Kinchen, et al., La.App., 280 So.2d 342; and Dixie Electric Membership Corp. v. Whitehead, La.App., 280 So.2d 315. Our confidence in Mr. Graham as an expert witness was further shaken by his testimony in the Sibley case this day decided, La.App., 280 So.2d 346, in which he stated unequivocally, when asked if he were competent to appraise property, “No, I am not,” and was accepted by the trial court as an expert witness over the objection of plaintiff’s counsel. The testimony in that case was adopted by stipulation in this case.
The comparables used by Mr. Graham in the Shell Sibley case are the same ones used in this case. The three Rice sales which Mr. Graham used in the Shell Sibley case aré equally objectionable as comparables in this case for the reason that they are sales of subdivision property with all utilities, on blacktopped roads, one mile north of Walker, Louisiana. The property in this case is a rectangular-shaped piece of property seven miles north of Walker, Louisiana, with its only access being a dirt road across the Crown-Zeller-bach property in front of it, and with no utilities.
The best testimony that we have in this case is that of James C. Carpenter, appraiser for Dixie Electric. He found the highest and best use of subject land to be for the growing of timber. He described it as typical Livingston Parish timber land. Mr. Carpenter used as comparables three similar tracts of land located fairly close by, two of rural residential property and one of timberland owned by Crown Zeller- *327 bach. They ranged in price from $350 per acre to $500 per acre. Making the necessary adjustments, Mr. Carpenter arrived at the figure of $333.33 per acre for subject property, which would result in a figure of $803 for the 2.41 acres expropriated at full fee value. He assigned 80% of value, or $642.40, inasmuch as the landowner still retained surface rights to this unfenced land over which plaintiff was awarded a servitude. One of the most important surface rights retained by defendant as a timber grower is the accessibility over this expropriated land to the remainder of 67.59 acres of timberland. We believe that Mr. Carpenter’s appraisal is well grounded in reason, and, accordingly, the award of the trial court will be reduced to the sum of $642.40 for servitude expropriated.
 The trial court’s award for timber will be reversed. As we have stated in three of the consolidated cases this day decided, Dixie Electric Membership Corp. v. Whitehead, La.App., 280 So.2d 315; Dixie Electric Membership Corp. v. McDowell, La.App., 280 So.2d 306; and Dixie Electric Membership Corp. v. Sibley, La.App., 280 So.2d 346, there can be no separate award for the timber on a right-of-way unless it can be considered a separate, harvestable crop, which is not the case in this instance. The value of the timber was doubtless taken into consideration in arriving at the value of the land expropriated. The position of the jurisprudence in Louisiana on this point has been well-stated in State through the Dept. of Highways v. Hart, 249 So.2d 310, 316 (La.App. 1st Cir. 1971) which in substance holds there where trees are not nursery stock which can be dug and sold in the nature of a crop, they cannot be considered as a growing crop, and no award can be made for their value separate and apart from the land itself. The value of the timber, therefore, may be considered in determining the value of the land for its best and highest use.
Defendant has utterly failed to sustain his burden of proving actual damage, or of proving the value of his property before and after the taking, all as required by the jurisprudence. See Michigan Wisconsin Pipline Co. v. Fruge, 227 So.2d 606, 610 (La.App. 3d Cir. 1969), writ refused 255 La. 149, 229 So.2d 732 (1970). The unsupported $1,000.00 severance damage award uniformly made by the trial judge in six of these ten consolidated cases will be reversed.
We allude to a relatively detailed discussion of the problems entailed and the methods employed in- fixing expert witness fees included in our opinion in the consolidated case of Dixie Electric Membership Corporation v. McDowell, our Docket No. 9348, handed down this day.
In the instant case the services of Earl R. Graham as an expert appraiser of real estate were engaged by the defendant McLin some time prior to the trial date. It appears that Mr. Graham’s appraisal work was cursory in nature and limited in scope and extent. He did not repair to the courthouse to obtain the comparable sales on which he relied. His statement for services makes no mention of the hours he utilized in preparing his appraisal and reaching his conclusions. Under the circumstances here we think that Mr. Graham is entitled to a fee of $100.00 for his preparatory appraisal work and $50.00 for his appearance in court as an expert witness and that the total sum of $150.00 should be taxed as costs.
For the reasons assigned the judgment of the trial court awarding compensation for the true value of the land expropriated for the servitude is amended by reducing the sum from $2906.63, including a separate award of $1099.13 for the timber in the right-of-way, to the sum of $642.40; the award by the trial court of severance damages in the amount of $1,000.00 is reversed; the fee of Earl R. Graham as an expert witness is fixed at the sum of $150.- *328 00 and it is taxed as costs; and in all other respects the judgment is affirmed.
The defendant McLin, Jr. is assessed the costs of this appeal; the plaintiff shall pay all other costs.
Affirmed in part, as amended; reversed in part; and rendered.