TUCKER, Judge.
This is a suit by Dixie Electric Membership Corporation, a Louisiana non-profit membership corporation, organized under Louisiana Revised Statutes 12:401-430, and engaged in the business of transmitting and distributing electricity for power, lighting, heating, or other such uses, in a number of parishes in the State of Louisiana. Plaintiff Dixie Electric sought to expropriate a hundred foot right-of-way in the northern portion of Livingston Parish for the purpose of a 69KV transmission and distribution servitude to give better service in the Watson to Holden, Louisiana, area.
A description of the proposed installation taken from the testimony of Mr. Floyd Barbay, the consulting electrical engineer who designed the transmission line in question, is given below.:
The section of the 69KV transmission line running across the property to be expropriated consists of a single pole type of construction with two crossarms at the top. The basic pole is sixty feet tall. It is southern yellow pine, creosoted. The typical pole has a crossarm at the top which is eight feet long, and which is placed 3.5 feet from the top of the pole. There is a six foot space beneath it, between it and the next cross-arm which is ten feet long. There is a string of four bells which extends along the crossarms to hold three conductors. The wire is about forty feet above the ground, and the poles are about three hundred feet apart. The pole being six *348 ty feet tall and about sixteen inches in diameter at ground level, is buried eight feet in the ground, with the result that it extends about fifty-two feet into the air. There is one conductor on the tip-top of the pole, which is known as the static. The construction of the wire at this point is three-eighths of an inch in diameter, made of high strength steel. Its primary purpose is to drain off any static charges or lightening charges which might hit the line. This line protects the three conductors which are located beneath it, one conductor on the top cross-arm, and two conductors on the bottom crossarm. The wires that carry the “hot electricity,” the phase conductors, are 336^100 MCM aluminum, known as 86SR. They have twenty-six strands of aluminum and seven strands of steel. The minimum clearance of this line is twenty-seven feet, although the codecalls for only twenty-one feet in an area accessible to pedestrians.
The suits brought by Dixie Electric to expropriate the surface needed for its servitude were consolidated for trial, and judgment was given for Dixie Electric granting the right of servitude and awarding judgments in favor of the several defendants, in varying amounts, for the surface rights expropriated and for severance damage caused to the remainder. Ten of these defendants have appealed or answered the appeal taken against them by Dixie Electric. The right to expropriate by Dixie Electric was not questioned on appeal. The sole question in each appeal centers around the amount of the award made for the surface rights taken and for various and sundry items of damage.
Judgment was awarded in the instant suit granting a right-of-way to plaintiff Dixie Electric Company across defendant’s property. It consists of two separate tracts of land located some 3,000 feet apart; namely, Tract # 20 containing 0.23 acres in the right-of-way, and Tract # 25 containing 2.86 acres in the right-of-way. These two tracts are more properly described as follows:
“(1) A certain tract or parcel of land situated in the south one-half of Section 33, T-5-S, R-4-E, Livingston Parish, Louisiana, and being more particularly described as follows: Commence at the southeast corner of said Section 33, T-5-S, R-4-E, thence S 89° 47 W, 986.70 feet along the south line of Section 33 to a point, said point being the southeast corner of the property of Shell Sibley, Jr., thence continue S 89° 47' W, 422.56 feet along the same to a point, and the Point of Beginning; thence N 68° 26' W, 1238.00 feet to a point on the north property line of Shell Sibley Jr.; thence S 89° 47' W along the north property line of same a distance of 269.47 feet to a point; thence S 68° 26' E, 1238.00 to a point on the south property line of Shell Sibley, Jr.; thence N 89° 47' E 269.47 feet along the south property line of same to the Point of Beginning, containing 2.86 acres more or less.”
■and
“(2) A certain tract or parcel of land situated in the SW J4 of the NE 14 of Section 32, Township 5 S, Range 4 E, Greensberg Land District, Livingston Parish, Louisiana, consisting of a 100 foot wide strip of land comprising the servitude or right-of-way, the center line of said 100 foot servitude or right-of-way being more particularly described as follows: From the southwesterly corner of the property of Shell Sib-ley, Jr. in Section 32, Township 5 S, Range 4 E, Livingston Parish, Louisiana, at which corner the said property of Shell Sibley, Jr. lies adjacent on the westerly and southerly sides to the property of Crown *349 Zellerbach Corporation in Section 32, Township 5 S, Range 4 E, Livingston Parish, Louisiana, run in a northerly direction along the westerly property line of the said property of Shell Sibley, Jr. as it abuts the easterly property line of said property of Crown Zellerbach Corporation a distance of thirty-five (35) feet to a point, which point is the Point of Entry of the center line of the one hundred (100) foot right-of-way or servitude expropriated; thence run along the right-of-way or servitude center line S 71° 29' E a distance or one hundred (100) feet through the property of Shell Sibley, Jr., the said servitude or right-of-way area containing 0.23 acres more or less.”
The trial court awarded judgment in favor of the defendant Shell Sibley, Jr., in the amount of $2,317.40 as just compensation for the property expropriated; $800.00 for the timber on the right-of-way; and in addition $1,000.00 for severance damages. The expert witness fee of Mr. Earl Graham was set at $600.00 and taxed as costs.
The plaintiff Dixie Electric appealed from this judgment, alleging as error the uniform evaluation of the property taken at $750.00 per acre; the awarding of the landowner the full fee value of the property expropriated; in making an additional award for timber located on the right-of-way ; and for awarding severance damages.
No oral or written reasons for judgment were given by the trial judge. Simple arithmetic indicates, however, that $750.00 per acre was the basis, borne out by a supplemental per curiam of the trial court, for the award made in this suit as in eight of the Dixie Electric suits consolidated for trial. We do not believe the evidence justifies such a blanket award and do not understand the method by which this figure was reached especially in view of the fact that Earl R. Graham, expert witness for the defendants in this case, appraised the land at the trial at $1,000.00 per acre, while Dixie Electric’s appraiser, James C. Carpenter, appraised one tract at $333.33 per acre and tract No. 2 at $620.00. Averaging estimates of expert witnesses, or drawing a mean between or among them has never been considered a sound basis for judgment in the expropriation suits of this state. We can find no reasonable basis in the record for the trial judge’s evaluation per acre of the land expropriated.
We remain unconvinced by the defendant’s expert witness, Earl R. Graham, who was employed by the defendant a day or two before the trial began and made only a cursory examination of it. It may be noted that in court Mr. Graham admitted to having had only one real estate transaction in Livingston Parish within the past year, and in fact that he had done very little real estate work within Livingston Parish within the past ten years. Despite the lack of experience with Livingston Parish property Mr. Graham testified expansively in court that the best use of any land is residential, and that almost all of the land in Livingston Parish is worth $1,000.00 per acre. Certainly the various comparable sales listed by James C. Carpenter in the ten Dixie Electric cases consolidated for trial are ample proof that there are many sales in Livingston Parish ranging from $300 to $500 per acre, including the timber thereon. In fact it is .the timber which seems to give much of the land in Livingston Parish its highest and best use.
We are particularly concerned with Mr. Graham’s testimony as to the Shell Sibley property, because Mr. Graham himself, when asked in court if he were competent to appraise property, said, “No, I am not,” and the trial court accepted him as an expert in the field of appraising over the objection of plaintiff’s counsel (Shell Sib-ley, Notes of Testimony, page 70).
*350 The comparable sales used by Mr. Graham bear out his unreliability as an expert appraiser. As one of his comparables, Mr. Graham chose three Rice family sales of subdivided property located only one mile from the town of Walker, Louisiana. Defendant’s property is located six to eight miles from Walker. The Rice property is situated on a Parish maintained, blacktopped road; whereas Tract #25 has no frontage whatsoever and can be approached only by a gravel road through the property of Stanley H. McLin. The Rice property has all utilities, whereas Tract # 25 has none. Although there were some allegations of future growth and “briarpatch subdivisions” springing up everywhere, there was no actual proof of residential development in the area of defendant’s property, which tends to cast further doubt on defendant’s appraiser’s view of this property as having its highest and best use for residential purposes.
We cannot accept as a comparable either the sale listed by Mr. Graham of Rubin, et al. to Dixie Electric Membership Corporation. This property was bought by Dixie Electric for a proposed substation site. There were allegations that the landowners knew of this, and that their knowledge affected the sales price.
L. A. Hawkins, the other expert engaged by defendant on the day before the trial, also appraised defendant’s property at $1,000.00 per acre. He admitted that he had never seen Tract # 20, and that he had not walked over Tract #25. We find his comparables just as unreliable as Mr. Graham’s because they, too, were located in a subdivision with utilities, street lights, hard-surfaced roads, and other advantages. Furthermore they were located about six miles from defendant’s property.
The most convincing testimony is that of Dixie Electric’s appraiser, James C. Carpenter, who appraised Tract # 25 at $333.33 per acre, with a highest and best use in timber. Mr. Carpenter made the necessary adjustments with his compara-bles and arrived at $952.00 for the 2.86 acres taken. He assigned 80% of value for this tract, because defendant retained the surface rights for access, pasturage, or other uses. We believe that Mr. Carpenter’s appraisal is well grounded in reason, and is controlling here, and, accordingly, the award of the trial court for the servitude taken from Tract # 25 will be reduced to the sum of $761.60.
Tract # 20 was appraised by Mr. Carpenter at $620.00 per acre. He found its highest and best use to be for rural residential property. He used comparables ranging from $500.00 per acre to $1,100.00 per acre and adjusted it to coincide with defendant’s property. For 0.23 acres expropriated by Mr. Carpenter assigned a value of $143.00. He further appraised it at 80% of fee value, since defendant retained surface rights to the land expropriated which constituted only the extreme southwest corner of Tract # 20. This is the tract upon which defendant lived, his house being situated 375 feet from the right-of-way. We regard Mr. Carpenter’s appraisal to be correct, and, accept Mr. Carpenter’s appraisal of Tract # 20 as the judgment of this court. Accordingly, the trial court’s award for the servitude taken will be reduced to the $114.40 with respect to Tract # 20.
We can find no basis in the evidence for the awarding of severance damages. In the case of Tract # 25 the servitude is expropriated from the approximate middle of a 28 acre tract. The servitude will not be fenced. Minimum clearance of the wires at this juncture will be 30 feet. The highest and best use of this tract is for timber, and the testimony in the record indicates that timber production can still be accomplished on the remainder easily despite the presence of the servitude. With proper logging methods timber can be harvested without danger to Dixie Electric’s lines. In the case of Tract # 20 upon which defendant lives the servitude is so *351 far from his house as not to interfere with it. It will still be available for pasturage of defendant’s cattle.
Defendant has utterly failed to sustain his burden of proving actual damage, or of proving the value of his property before and after the taking, all as required by the jurisprudence. See Michigan Wisconsin Pipeline Co. v. Frugé, 227 So.2d 606, 610 (La.App. 3d Cir. 1969), writ refused 255 La. 149, 229 So.2d 732 (1970). The unsupported $1,000.00 severance damage award uniformly made by the trial judge in six of these ten consolidated cases will be reversed.
The separate award for timber will be reversed, also. It is clear from the record that Mr. Carpenter took into consideration the value of the timber when he appraised the value of the land to be expropriated, which is the proper procedure. Unless the timber can be appraised as a “special crop,” which is not the case in the present instance, no award can be made for it separately. State through Dept. of Highways v. Hart, 249 So.2d 310, 316 (La.App. 1st Cir. 1971). Mr. Robert Avery Campbell, an expert forester, testified as defendant’s witness and evaluated the timber on the land expropriated at $800.00, which is in excess of the appraisal figure set by Dixie Electric’s appraiser, Mr. Carpenter, but Mr. Campbell admitted on cross examination that the price would depend upon accessibility and also that it would be influenced by the fact that it was second growth timber. We see no reason to disturb the appraisal of Mr. Carpenter, nor to allow an additional sum for the timber in the right-of-way.
For a relatively detailed discussion of the problems entailed and the methods used in fixing expert witness fees, we refer to our opinion in the consolidated case of Dixie Electric Membership Corporation v. McDowell, La.App., 280 So.2d 306, decided this day.
In the instant case the services of Earl R. Graham as an expert appraiser of real estate were engaged by the defendant Shell Sibley, Jr. some time in advance of trial. Mr. Graham’s examination and preparatory appraisal work appear to have been cursory in nature and limited in scope and extent. He did not examine the records in the courthouse in order to obtain the sale comparables on which he relied. His statement for services makes no attempt to itemize the number of hours he consumed in making his examination, preparation and appraisal report. Under the circumstances we believe that Mr. Graham is entitled to a fee of $100.00 for his preparatory appraisal work and $50.00 for his appearance in court, and the total sum of $150.00 should be taxed as costs.
For the reasons assigned the judgment of the trial court awarding compensation for the true value of the land taken for the servitude is amended by reducing this sum for $3117.40, including a separate award for timber in the right-of-way of $800.00, to the sum of $870.00; the award by the trial court of severance damages in the amount of $1,000.00 is reversed; the fee of Earl R. Graham as an expert witness is reduced and fixed at the sum of $150.00 and same is taxed as costs; and in all other respects the judgment of the trial court is affirmed.
The defendant Sibley is cast with the costs of this appeal; the costs of the trial court shall be borne by the plaintiff.
Affirmed, as amended, in part; reversed in part; and rendered.