280 So.2d 332 (1973)
DIXIE ELECTRIC MEMBERSHIP CORPORATION
v.
Damien KINCHEN.
No. 9354.
Court of Appeal of Louisiana, First Circuit.
June 20, 1973.
Rehearing Denied July 20, 1973.
Writs Refused September 7, 1973.
*333 Paul H. Dué, Mellon, Cavanaugh & Dué, Denham Springs, for appellant.
L. B. Ponder, Jr., Amite, for appellee Kinchen.
Before LANDRY, TUCKER and PICKETT, JJ.
TUCKER, Judge.
This is a suit by Dixie Electric Membership Corporation, a Louisiana non-profit membership corporation, organized under *334 Louisiana Revised Statutes 12:401-430, and engaged in the business of transmitting and distributing electricity for power, lighting, heating, or other such uses, in a number of parishes in the State of Louisiana. Plaintiff Dixie Electric sought to expropriate a hundred foot right-of-way in the northern portion of Livingston Parish for the purpose of a 69KV transmission and distribution servitude to give better service in the Watson to Holden, Louisiana, area.
A description of the proposed installation taken from the testimony of Mr. Floyd Barbay, the consulting electrical engineer who designed the transmission line in question, is given below:
The section of the 69KV transmission line running across the property to be expropriated consists of a single pole type of construction with two crossarms at the top. The basic pole is sixty feet tall. It is southern yellow pine, creosoted. The typical pole has a crossarm at the top which is eight feet long, and which is placed 3.5 feet from the top of the pole. There is a six foot space beneath it, between it and the next crossarm which is ten feet long. There is a string of four bells which extends along the crossarms to hold three conductors. The wire is about forty feet above the ground, and the poles are about three hundred feet apart. The pole being sixty feet tall and about sixteen inches in diameter at ground level, is buried eight feet in the ground, with the result that it extends about fifty-two feet into the air. There is one conductor on the tip-top of the pole, which is known as the static. The construction of the wire at this point is three-eigths of an inch in diameter, made of high strength steel. Its primary purpose is to drain off any static charges or lightening charges which might hit the line. This line protects the three conductors which are located beneath it, one conductor on the top crossarm, and two conductors on the bottom crossarm. The wires that carry the "hot electricity," the phase conductors, are 336-400 MCM aluminum, known as 86SR. They have twenty-six strands of aluminum and seven strands of steel. The minimum clearance of this line is twenty-seven feet, although the code calls for only twenty-one feet in an area accessible to pedestrians.
The suits brought by Dixie Electric to expropriate the surface needed for its servitude were consolidated for trial, and judgment was given for Dixie Electric granting the right of servitude and awarding judgments in favor of the several defendants, in varying amounts, for the surface rights expropriated and for severance damage caused to the remainder. Ten of these defendants have appealed or answered the appeal taken against them by Dixie Electric. The right to expropriate by Dixie Electric was not questioned on appeal. The sole question in each appeal centers around the amount of the award made for the surface rights taken and for various and sundry items of damage.
In the instant suit judgment was given against defendant Damien Kinchen, expropriating a right-of-way across property owned by him, more properly particularly described as follows:
"A certain tract or parcel of ground situated in the east ½ of the east ½ of the SE¼ of the NE¼ of Section 16, T-6-S, R-5-E, Livingston Parish, Louisiana, and being more particularly described as follows: Commence at the NE corner of the SE¼ of the NE¼ of said Section 16, T-6-S, R-5-E, said point being the northeast corner of Damien Kinchen property; thence south 499.23 feet along the east line of said Section 16 and the east property line of Damien Kinchen to a point, and the Point of Beginning; thence N 68 deg. 24' W. 357.00 feet to a point, said point being on the west property line of Damien Kinchen; thence south 107.55 feet along the west property line of Damien Kinchen to a point; thence S 68 deg. 24' E, 357.00 feet to a *335 point; said point being on the east property line of Damien Kinchen and to the east line of Section 16; thence north 107.55 feet along the east property line of Damien Kinchen and the east line of Section 16 to a point, and the point of Beginning, containing 0.82 acres more or less."
Judgment was given in the trial court awarding defendant $615.00 for the land expropriated, and $1500.00 in addition "for servitude use and severance damages in this cause and for all costs and expert witness fees as fixed by the court." Earl R. Graham, who served as defendant's expert witness, submitted a bill for $400.00 covering preparatory appraisal work and for $150.00 per day for testifying in court. Civil Engineer, J. C. Kerstens, submitted a total bill of $600.00 for four days in Court as an expert witness to be divided equally between the Leonard Kinchen and Damien Kinchen suits.
Plaintiff appealed alleging error by the trial court in making an excessive evaluation of $750.00 per acre for the fee value of the land expropriated; then awarding 100% of the fee value; and also in awarding severance damages. Defendant answered the appeal, asking for an increase in judgment to $11,913.00.
No oral or written reasons for judgment were given by the trial judge. Simple arithmetic indicates, however, that $750.00 per acre, borne out by a supplemental per curiam of the trial court, was the basis for the award made in this suit as in eight of the Dixie Electric suits consolidated for trial. We do not understand how the trial judge arrived at this basis for valuation in view of the fact that Earl R. Graham, expert witness for nine of the defendants in these consolidated cases, appraised the land at trial for $1,000.00 per acre, while Dixie Electric's appraiser, James C. Carpenter, appraised it for $400.00 per acre. Averaging estimates of expert witnesses, or drawing a mean between or among them has never been considered a sound basis for judgment in the expropriation suits of this state. We can find no reasonable basis in the record for the trial judge's evaluation per acre of the land expropriated.
We remain unconvinced by the defendant's expert witness, Mr. Graham, who was employed by the defendant on the day before the trial began and viewed defendant's property from the road only once. Mr. Graham relied upon only two comparable sales when testifying in court. It may be noted that in court he admitted to having had only one real estate transaction in Livingston Parish within the past year, and in fact that he had done very little real estate work within Livingston Parish within the past ten years. Despite the lack of experience with Livingston Parish property Mr. Graham testified expansively in court that the best use of any land in Livingston Parish is residential, and that almost all of the land in Livingston Parish is worth $1,000.00 per acre. Certainly the various comparables sales listed by James C. Carpenter in the ten Dixie Electric cases consolidated for trial are ample proof that there are many sales in Livingston Parish ranging from $300.00 to $500.00 per acre, including the timber thereon, which timber seems to give much of the land in Livingston Parish its highest and best use.
The two sales he relied upon as comparables are as follows: (1) a sale from Leonard Kinchen to his nephew Damien Kinchen of a 10 acre tract at $2,200.00 per acre, and (2) a sale of industrial property valued at $666.00 per acre. The first of these sales is not a comparable, since it was a sale involving the entire tract from which the subject portion was taken. Dixie Electric's appraiser testified that this property had a highest and best use for timber, but Mr. Graham testified that its best use was for residential property, basing his judgment on the fact that the Kinchen property, ten acres of a one hundred thirty acre tract adjoining defendant's property on the east, *336 had been bought for a subdivision. He testified that a survey had been made for subdividing in September or October, 1970. We find it highly significant, however, that the Dixie Electric survey for the right-of-way herein being litigated was made in July and August, 1970, just prior to the Kinchen survey. We are adversely influenced, also, by the fact that the Kinchen property is located four to five miles from the small community of Holden, Louisiana, and the property in between is sparsely settled. See State through the Dept. of Highways v. Shelton, 192 So.2d 161 (La.App. 2d Cir. 1966), writ refused, 250 La. 16, 193 So.2d 528 (1967). No work has been performed to date on the proposed Kinchen subdivision. No demand of this property as a subdivision was established except by Mr. Graham's vague, undocumented testimony, and no subdivision costs were submitted into evidence, both of which items are required before we can give weight to the testimony that the Kinchen land is valuable as a subdivision. See State through the Dept. of Highways v. Vallon, 182 So.2d 705 (La.App. 4th Cir. 1966). In the light of all the foregoing we find the Damien Kinchen property has no reasonably prospective use as a subdivision and such use in the reasonably foreseeable future is entirely remote, conjectural and speculative.
The second sale relied upon by Mr. Graham was a sale by Mr. Addison of the Clerk of Court's Office to Berkley B. Boyd, of 18 acres. This sale was made June 28, 1968, before the Expressway was built in this area, which has increased land values to the extent of 75%, according to Mr. Graham. Although the Addison sale was made for $666.00 per acre, it should be noted that this property was industrial property having railroad frontage, and that it was near the steel alloy rolling mill.
We find the appraisal and testimony of Dixie Electric's appraiser, James C. Carpenter, much more convincing. Although there are a number of small residential tracts in the area, the property in this vicinity is still more timberland in nature than residential, and he concluded that the highest and best use of defendant's property was for timber, and that it was typical Livingston Parish land.
Mr. Carpenter's exhibits and testimony are quite credible, and his comparables are entitled to great weight. They are near defendant's land, similarly situated, and very much like it in nature. They range in value from $350.00 per acre to $500.00 per acre. Mr. Carpenter adjusted defendant's land to a value of $400.00 per acre, which, for the 0.82 acres expropriated would amount to $328.00. This appraiser allowed only 80% of fee value due to the fact that defendant landowner would still retain substantial surface rights to his property, which will remain unfenced. It will give access to timber lands in the rear of it, and can be used for pasturage, or a number of other usages, with which the relatively simple installation contemplated by Dixie Electric will not interfere. We believe the evaluation of Mr. Carpenter to be reasonably grounded and, accordingly, will amend the trial court judgment in favor of defendant by reducing the award to the amount of $262.00 for the land expropriated.
The trial court's award for severance damage will be reversed. The record is completely devoid of any evidence to substantiate any damage to the remainder of defendant's property to be caused by plaintiff's expropriation. Defendant has failed to sustain his burden of proving the actual severance damages and of proving the value of his land before and after the taking, all of which is required by the jurisprudence of the state of Louisiana. See Michigan Wisconsin Pipeline Co. v. Fruge, 227 So.2d 606, 610 (La.App. 3d Cir. 1969), writ refused, 255 La. 149, 229 So.2d 732 (1970).
We refer to our rather detailed discussion of the problems entailed and the methods employed in fixing expert witness fees, which is contained in our opinion in the *337 consolidated case of Dixie Electric Membership Corporation v. McDowell, La.App., 280 So.2d 306, decided this day.
In the instant case the services of Earl R. Graham as an appraiser of real estate were engaged by the defendant a short time before the case was tried. It seems that Mr. Graham's examination and preparatory appraisal work were relatively limited in scope and extent. In his statement for services he does not attempt to itemize the hours consumed in his work and the output of effort in reaching his conclusions. He did not examine the records in the courthouse to obtain the sales upon which he relied as comparables. Under the circumstances here we feel that Mr. Graham is entitled to a fee of $50.00 for his preparatory appraisal work and a fee of $50.00 for his appearance in court as an expert witness and that the total sum of $100.00 should be taxed as costs.
The witness, J. C. Kerstens, a registered Civil Engineer and Surveyor, called by the defendant, did not possess the qualifications of an expert in the field of real estate appraising, and, initially, was rejected by the trial court in this field of expertise. However, the record reflects that the defendant engaged Mr. Kerstens to survey his property, and to prepare a plot plan for a proposed subdivision of the tract, which employment of Mr. Kerstens originated after the plaintiff commenced running its lines for its projected power line right-of-way but prior to plaintiff's filing this expropriation suit. As we have stated the record reflects that the subject property does not possess the characteristics of a subdivision, and, since Mr. Kerstens was not competent to give an expert opinion with reference to land values, he is not entitled to an expert witness fee.
For the reasons assigned the judgment of the trial court awarding defendant compensation for the true value of the land taken for the servitude is amended by reducing this sum from $615.00 to the sum of $262.00; the judgment awarding severance damages in the sum of $1,500.00 is reversed; the fee of Earl R. Graham as an expert witness is reduced from the sum of $400.00 to the sum of $100.00, and same is taxed as costs; the fee of J. C. Kerstens in the sum of $300.00 as an expert witness is rejected; in all other respects the judgment is affirmed.
The defendant is cast with the costs of this appeal; all other costs are to be borne by the plaintiff.
Affirmed in part, as amended; reversed in part; and rendered.